IN THE

# Supreme Court of Georgia,

## AT ATLANTA.

## SEPTEMBER TERM, 1884.

PRESENT—JAMES JACKSON, . . . . . . . . CHIEF JUSTICE.
SAMUEL HALL, . . . . . . . . . ASSOCIATE "
M. H. BLANDFORD, . . . . . . . . ASSOCIATE "

## HIGGINS vs. THE CHEROKEE RAILROAD.

1. Grounds of motion for new trial, which complain that the court did not charge certain propositions of law, which he should have given in charge, but which do not show that his attention was especially called to these questions, or that a fuller or more particular charge on them than was given was requested, present no issue upon which this court can pass; and such grounds and a bill of exceptions predicated thereon fail to point out in what the alleged errors consist.

2. A bill of exceptions must p'ainly specify, not only the decision complained of, but the error alleged to exist therein, and without a compliance with this requirement, this court cannot consider the points made under such general exceptions.

3. In an action against a railroad company for an injury to the plaintiff's eye, caused by a spark or cinder from the defendant's engine, there was no error in refusing to permit the plaintiff to prove that the defendant was worth from two to three hundred thousand dollars.

4. On the question of the negligence imputed to the defendant, the testimony of a witness familiar with the management, use and construction of steam locomotive engines, "that he never heard of any accident to persons from sparks emitted from the smoke-stack,

either before or since," the one then under investigation was pertinent and material.

5. If counsel for one party discussed in argument questions outside of the issues made in the case, without objection being made thereto, and when his adversary, in reply sought to do so likewise, he was interrupted, and was requested by the court to confine himself to the case, this furnished no ground of exception.

6. There is no rule or practice which prohibits the discussion of a motion for non-suit in the presence of the jury empanelled to try the case. The practice of removing the jury in certain cases, when questions of the admissibility of evidence are to be discussed, rests on peculiar reasons not applicable to a motion for non-suit; and this practice will not be extended to other cases than those in which it has already been permitted.

(a.) At best, this is a matter of discretion for the court, and his discretion will not be controlled, unless in a case of flagrant abuse.

7. Evidence that there was a point on the defendant's road over which the train on which the plaintiff was riding passed, where there was a grade of two hundred and ninety feet to the mile, and that, in ascending it, the engine emitted steam and cinders in greater quantities, and with much more force, than when passing over other portions of the road, was inadmissible, where it was not pertinent to any issue made by the pleadings; and especially so where there was no allegation or offer to prove that it was a scale or cinder emitted in this locality which struck the plaintiff in the eye and occasioned the injury for which this suit was brought.

(a.) Where an amendment was made, raising an issue on which such evidence would have been admissible, but was subsequently withdrawn, this did not render the evidence admissible.

8. Semble, that a non-suit should have been granted in this case, on the ground that the plaintiff's evidence made no case entitling him to a verdict under the law. This is not decided, because no cross-bill of exceptions was taken or other exceptions made to the decision of the court overruling the motion.

(a.) For the same reason, no decision is made on the point, to what extent negligence is a question, both as to the law and facts involved in it, peculiarly cognizable by the jury; and as to the power of the judge to charge them as to facts which constitute negligence or which relieve the party accused from the charge.

9. The plaintiff was voluntarily on the train where he was injured, by the invitation of the conductor, made at his own request; he paid no fare, and none was expected from him; he selected an open flat car, on which he rode rather than in the passenger coach, and was in a position where he was more exposed to accident from sparks and cinders than he would have been had he taken a seat in the closed coach:

Higgins *vs.* The Cherokee Railroad.

*Held,* that he was entitled to look only for such security as that mode of conveyance was reasonably expected to afford; and having voluntarily incurred the injury of which he complains, resulting from getting a cinder in his eye, he was not entitled to recover from the railroad, even if it were somewhat at fault.

(*a.*) It is doubtful if, under the circumstances, he was a passenger at all in the full legal sense of that term. At most, he was so only *sub modo* and to a limited extent.

(*b.*) A carrier of passengers is not obliged to foresee and provide against casualties which have not been known to occur before and which may not be reasonably expected. If it has availed itself of the best known and most extensively used safeguards against danger, it has done all the law requires, and its liability is not to be ascertained by what appears for the first time after the disaster to be a proper precaution against its recurrence.

January 6, 1885.

Practice in Supreme Court. Railroads. Damages. Negligence. Practice in Superior Court. Attorney and Client. Jury and Jurors. Non-suit. Common Carriers. Before Judge BRANHAM. Polk Superior Court. February Term, 1884.

Thomas Y. Higgins brought his action against the Cherokee Railroad Company to recover $10,000.00, as damages for a personal injury, alleged to have resulted to him from the negligence of the defendant.

On the trial, plaintiff testified, in brief, as follows: On Sunday, May 2, 1880, plaintiff was at Rockmart on a visit. Defendant's train came up. A Mr. Bullock, who was on board, and whom plaintiff had not seen for some time, hallooed to him to get on and go to Cedartown with them. Plaintiff boarded the train, and the car which he was on being crowded, he and others went forward to the next car. This was immediately in the rear of the tender of the engine. It was a flat car, without sides or covering, and with benches across it. Plaintiff was near the rear of this car. A thin spark or scale of iron from the engine stuck in his right eye. At the time, it did not hurt him very much, but when he arrived at Cedartown, it was paining him con-

siderably.   The pain became very severe, so that plaintiff
was in bed for three or four months; he suffered great pain,
and ultimately lost the sight of that eye entirely, and the
sight of the other eye was also much impaired.   He called
in a physician that night or the next day, and subsequently
went to Atlanta, where he was treated by other doctors.
He paid $25.00 to one physician, and owed $50.00 to an-
other for a single operation, besides other bills.   His ex-
penses and loss of time while sick would amount to $400.00
or $500.00.   Prior to the injury, he had been engaged in
different occupations, as carpenter, whiskey-seller, seller
of beef and buyer of cotton.   When he worked out, he
never did so for less than $50.00 per month.   He had a
family, consisting of himself, his wife and two children.
Since the injury, he cannot work after night, and is unfit-
ted by his defective vision for the pursuits which he form-
erly followed.   Several years prior to the injury, plaintiff
had worked as a train-hand on the road.   The cars then
ran from Cartersville to Rockmart, and the train then ran
on Sundays.   On the day of the injury, there were four
or five flat cars composing the train, but no passenger car;
all appeared to be full.   He did not see any convicts on
the train, nor did he see any ladies.   He did not pay any
fare, because none was asked of him; would have paid it
if asked.   He denied having any conversation with one
Vandiver about riding on the train.   Had heard of per-
sons having their eyes hurt by riding on trains, but not
from riding near the engine.   The engine had no spark-
arrester; it may have had one on that day, but not since;
he has examined it since, and it has none.   He saw noth-
ing unusual about the running of the train that day.   The
engine was the newest one they had on the road.   In Feb-
ruary, 1880, plaintiff had ridden on the same train, but
then rode in the cab; thought it was the same engine.   He
denied intemperate habits, but said he " took a dram."   At
the time of the injury, plaintiff was thirty-four years of age.

Plaintiff closed.   Defendant moved for a non-suit, on

the ground that the injury was not attributable to any negligence on the part of the defendant; that it was not such an accident as the company could foresee and provide against; and that the damage was too remote. The motion was overruled.

Later in the trial, plaintiff introduced other evidence, to the effect that his expectation of life was about thirty one years; that from childhood he had had some inflammation in the lids of his eyes, but his sight was good; that he complained and seemed to be in considerable pain. One witness testified that he extracted a cinder from plaintiff's eye which was stuck in the back, and that the cars were full of persons when the accident occurred. A witness for the plaintiff testified that there was an excursion on the day of the accident. There was also other evidence confirmatory of that already detailed.

The evidence for the defendant was, in brief, as follows: It was not usual to run trains on Sunday on defendant's road. On this occasion, certain convicts, under the control of Col. C. B. Howard, were to be carried to work on a cut or grade on the road. They were expected in Cartersville on Saturday, but failed to arrive, and were carried over defendant's road on Sunday. There was no excursion. There was a passenger coach attached, and about twenty paying passengers, besides four non-paying ones, including the plaintiff, were on board. The convicts were not allowed to ride in this coach, but were carried on the flat cars. The conductor testified that he usually carried about twenty along the line, and that he had carried eighty passengers at one time, but that that was a full double load, every seat and the aisles being full. The engine used at the time of the accident to plaintiff was a new one, having been in use only a few months. It was a wood-burner of good make, and had a spark-arrester, such as is usual. Near the mouth of the smoke-stack there was a hood or iron piece shaped somewhat like an umbrella, against which the steam from the exhaust pipes, carrying with it the

smoke and cinders, struck.  This had a tendency to throw to the bottom all heavy particles, and subsequently they would be cleaned out of the smoke-stack.  Above this was a wire net, having apertures one-eighth of an inch in size, so that nothing larger than this could escape.  Some sparks and cinders escape from all engines; this cannot be helped.  Cotton had frequently been hauled directly behind the engine without accident from sparks.  The president and conductor of the defendant testified that they never heard of any serious personal injury from engine sparks before.  Plaintiff and Vandiver, the conductor of defendant, had worked together on the road.  On the evening before the accident, plaintiff told Vandiver that he would like for the latter to get him a job, and Vandiver said he would do anything he could.  On the evening of the accident, plaintiff asked Vandiver to let him go up to Cedartown, that he might see Mr. West, the president of the road.  Vandiver assented, and carried plaintiff free of charge, as is generally done among railroad men.  He invited plaintiff into the passenger car at the rear of the train where there was room, but plaintiff said he had not been over the road since it was built, and wanted to see the country ; that he would go out on the flat car and ride there.  Vandiver told him, " all right ;" that he would go back in the passenger car, and would join him as soon as he had finished.  About two and a half miles from Wimberley's hill, the conductor noticed plaintiff wiping his eye, and the latter said that he had a cinder in it.  On the day previous, however, the conductor had noticed plaintiff wiping his eyes with a silk handkerchief, and that they were very red and running; plaintiff said they were sore.  On arriving at Cedartown, Vandiver introduced the plaintiff to West, but the latter said he did not have time to talk to him, and plaintiff returned to Rockmart that evening.  The train was run in the usual manner on that day.  After the accident, plaintiff remained about Rockmart for some days, and was drinking

whiskey; it was his habit to drink some. There is more likelihood of getting cinders in one's eyes and getting one's clothing burned on a flat car than in a coach. It is not customary to haul passengers on flat cars, but in coaches.

The jury found for the defendant. Plaintiff moved for a new trial, on the following grounds:

(1.) Because the verdict is contrary to the evidence, against the weight of the evidence, and is without evidence to support it.

(2.) Because said verdict is contrary to law, and to the principles of practice and equity.

(3.) Because counsel for the defendant, in the argument of the case before the jury, were allowed to discuss the importance and beneficial effects of railroads upon the country; and when counsel for the plaintiff, in the commencement of his argument, began to allude to the great power and influence of railroad corporations, and stated that "the contest between the plaintiff and the defendant was an unequal one," the court said, "Confine yourself to the case; I cannot permit you to discuss the parties."

(4.) Because the court refused to allow the plaintiff to prove by the witness, Charles West, that the defendant was worth the sum of two to three hundred thousand dollars. The witness so stated in answer to plaintiff's question, and, on motion of defendant's counsel, the court ruled out the testimony as irrelevant.

(5.) Because the counsel for defendant, after the plaintiff had closed his case, made a motion for a non-suit, and the court permitted the argument on said motion for a non-suit to be had in the presence and hearing of the jury. [Note by the court: "There was no request or suggestion by any one that the jury should be sent from the court-room. The motion, of course, was refused."]

(6.) Because the court did not state to the jury the issues and charges, as contained in the declaration, and, though requested to do so by plaintiff's counsel, failed to do so. [Note by the court: "Reference is made to the charge

hereto attached, as to what was said and done in reference to this ground ; nothing, except what is stated in the charge on this subject, was said or done, and there was no suggestion that the direction to the jury to look to the declaration for this purpose was insufficient.]

(7.) Because the court stated to the jury that " the defendant pleads the general issue, which is a denial of the plaintiff's cause of action, and says that there was a passenger coach on the train into which the plaintiff might have gone ; that he rode on the open car, on his own voluntary motion, to see the country; that the smoke-stack was provided with the most approved and best spark-arrester; that the engine was a new one, and of the best manufacture, not worn and rusted; and that the injury was occasioned by the plaintiff's own want of ordinary care or the result of pure accident,"—when, in fact, the only pleas were the general issue, and a second plea, stating generally that the injury was caused by plaintiff's own fault or negligence.

(8.) Because the court stated to the jury, " the plaintiff alleges that the defendant was negligent in providing an open platform car, upon which he was riding, so near the engine ; and that the smoke-stack of the engine had no spark-catcher or screen over the top of it, in consequence of all of which a large cinder or fire-brand, some three-eighths of an inch in length, escaped out of the top of the smoke-stack, and injured and destroyed his right eye, and that he is in danger of losing the use of his other eye by reason of its sympathy with the injured eye. By amendment to the declaration, the plaintiff says that the smoke stack had become so worn and rusted by use and exposure that the exhausting and escaping of the steam through it separated from it a particle of rusted iron and threw it into his right eye with great force, and that this was the cause of the injury."—Plaintiff's counsel stated to the court that the declaration was broader and contained other allegations ; whereupon, the court said to

the jury, " You will look to the declaration, and see whether I have stated it or not. I think I have stated the issue substantially."

(9.) Because the court did not charge the jury that the defendant was responsible to the plaintiff as a passenger, the defendant's counsel having, in their arguments to the jury, insisted that he was riding free, and as the invited guest of the conductor, that he was, therefore, a trespasser, and that the relation of carrier and passenger did not exist. .

(10.) Because the court charged the jury, " If a number of colored persons were occupying and riding on open flat cars, and the defendant had provided a suitable and safe passenger car for other passengers, and had it attached to the train at the time, and it was sufficient for the accommodation of such other passengers, then if the plaintiff obtained the consent of the conductor of the train to ride on an open flat car, for his own special accommodation, then he is only entitled to expect such security as the mode of conveyance, so far as the open flat car was concerned, might reasonably be expected to afford, and if he did so obtain such consent and did, under such circumstances, ride on a flat car, and was only exposed to such risk as resulted alone from riding on such flat car, and if the smokestack was not defective, and if it was provided with the best known spark-arrester in actual use, and the plaintiff's eye was, under such circumstances, injured or destroyed by a spark, cinder or scale from the smoke-stack, he would not be entitled to recover."

(11.) Because the court charged the jury, " If the plaintiff's eye was injured or destroyed from some cause other than a spark or cinder or scale from the smoke-stack, then he cannot recover."

(12.) Because the court charged the jury, " If the injury was the result of the plaintiff's own negligence, he cannot recover; or if it was a pure accident, he cannot recover."

(13.) Because the court charged the jury, " If the injury be small or the mitigating circumstances be strong, nominal damages only are given."

(14.) Because the court refused to allow the plaintiff to prove by the witness, Charles West, that the defendant's railroad had, at a place on its line between Rockmart and Cedartown, to-wit: at Wimberley's hill, a grade of two hundred and ninety feet to the mile, and that in ascending such a grade the engine emitted steam and cinders in greater quantity and with unusual force.—The witness had so testified in answer to plaintiff's cross-examination, and the court, on motion of defendant's counsel, ruled out the evidence, on the ground that there was no allegation in the declaration to authorize such proof. [By the court: " When counsel for plaintiff proposed to introduce this evidence, counsel for defendant objected, upon the grounds that there was no corresponding allegation in the declaration, and no claim that sparks were emitted from the smoke-stack on account of any defect in the construction of the road, or because of an extraordinarily steep grade. The court then said there should be such an allegation in the declaration; the plaintiff's counsel then amended the writ by inserting such an allegation; the defendant's counsel having moved for a continuance on account of the amendment, the plaintiff's counsel withdrew the amendment, and the trial proceeded without further reference to this question."]

(15.) Because the court did not charge the jury that the plaintiff would have the right to be compensated in damages for his physical and mental pain and sufferings, but in the charge stated, as some of the elements of damages, " the actual value of lost time, medical bills paid and actually owing the physician, the actual loss on account of diminished capacity to labor."

[The court added the following note : "I will state that the failure of the court to charge specially on the subject of mental and physical pain, as one of the elements of

damage referred to in the 15th ground of this motion, was an accidental, and not an intentional omission."]

(16.) Because the court did not give the jury any rule for determining the weight of evidence, or the preponderance of evidence.

(17.) Because the court did not give the jury any rule for reconciling the testimony of witnesses, nor for determining the credibility of witnesses in cases of conflict in their statements, although the testimony in the case was painfully conflicting.

(18.) Because the whole charge of the court did not fully and fairly present to the jury the case made by the pleadings and evidence presented by the plaintiff.

(19.) Because the court allowed the witness, A. G. West to testify as follows: " I never heard of any accident to persons from sparks from the smoke-stack of this engine before nor since."—The plaintiff objected to the introduction of the evidence, on the ground that it was not relevant to the issue, which objection the court overruled and admitted the evidence.

The motion was overruled, and plaintiff excepted.

J. A. BLANCE; DABNEY & FOUCHE, for plaintiff in error.

IVY F. THOMPSON; E. N. BROYLES; UNDERWOOD & ROWELL, for defendant.

HALL, Justice.

1. The 6th, 9th, 15th, 16th and 17th grounds of the motion for a new trial complain that the judge omitted charges upon certain questions involved in this litigation, and which were claimed to be essential to its full consideration. It is not shown, however, that his attention was specially called to these questions, or that a fuller or more particular charge on them than that given was requested. Counsel seem to forget that they owe a duty to the court in this respect, and if they fail to perform it, they thereby,

as a general rule, estop themselves from excepting on such grounds. Exception is taken to what the court did not charge or decide, rather than to its charges and rulings, and both the motion for a new trial and the bill of exceptions utterly fail to point out in what the error consists. No issue is made by such exception upon which we can pass, as has been repeatedly held. Indeed, the practice in this respect is so well settled that we need do nothing more than mention the rule to secure the ready acquiescence of the profession, not only to its existence, but its propriety.

2. Various rulings and charges of the court are set forth in the 7th, 8th, 10th, 11th, 12th, 13th and 18th grounds of the motion, and excepted to generally as erroneous, without specifying in what the error consists. Such general exceptions are insufficient. The bill of exceptions must plainly specify not only the decision complained of, but "the error alleged" to exist "therein," and without a compliance with this requirement, we cannot consider the points, which, for aught that appears from the record, are presented for the first time in this court. No argument should be allowed here upon questions thus presented.

3. There was no error in refusing to permit the plaintiff to prove that the defendant was worth the sum of from two to three hundred thousand dollars, as set forth in the 4th ground of the motion. We are unable to presume the relevancy of such testimony to any issue made in the case; it had no tendency to illustrate any contested question, and for that reason was incompetent.

4. On one of the leading questions in the case, the negligence imputed to the defendant, testimony of a witness familiar with the management, use and construction of steam locomotive engines "that he never heard of any accident to persons from sparks emitted from the smoke-stack, either before or since" the one then under investigation was pertinent and material, as will be shown further on, and the court was right in admitting it. There is,

therefore, nothing in the exception set out in the 19th ground of the motion.

5. The third ground of the motion complains that the defendant's counsel, in his argument to the jury, discussed questions outside the issues made in the case, and that when plaintiff's counsel (who does not seem to have offered any objection to his opponent's course) attempted to reply by following in the same track, he was interrupted and requested by the court to confine himself to the case, with the further remark, " I cannot permit you to discuss the parties." The evidence in every case is confined to the issue, and the discussion should not go out of that. Had the court's attention been called to the transgression of this rule by the defendant's counsel, we entertain no doubt that a proper reproof would have been administered, and that he would have been recalled from his wanderings, and compelled to confine his remarks to the case. Plaintiff's counsel, as it seems, did not wish to interpose; he was willing to indulge his adversary, thinking, doubtless, that he would be able to make capital for his client by his reply. The judge's attention was called to the matter at this point, and he very properly interfered to check remarks which tended to divert the attention of the jury from the case, and to induce them to reach a conclusion from considerations foreign to those arising from the facts in proof.

6. We are not aware of any rule or practice that prohibits the discussion of a motion for a non-suit in the presence of the jury empanelled in the case. They are sometimes removed, upon the suggestion of either party, or by the court itself, when questions of the admissibility of evidence are to be discussed; this practice stands upon peculiar reasons, not at all applicable to the discussion of a motion for non-suit. If the motion is granted, the case is withdrawn from the jury, but if it is denied, the impression which would be generally made upon their minds would not be unfavorable to the plaintiff. We are unwilling to extend this practice to other cases than the one

in which it has already been permitted. It is, at best, a matter much in the discretion of the court; and without a flagrant abuse of it, we would not feel justified in interfering with its exercise. It follows that the exception to the ruling complained of in the 5th ground of the motion is not well taken.

7. The plaintiff proposed to prove that there was a point on defendant's road over which the train passed on which he was riding, where there was a grade of two hundred and ninety feet to the mile, and that in ascending it the engine emitted steam and cinders in greater quantities and with much more force than when passing other portions of the road. This evidence was objected to and ruled out, because the declaration did not allege that the defendant had been negligent in constructing this part of its road. The plaintiff then amended his declaration so as to let in the evidence, when the defendant claimed surprise, and asked that the case be continued; that the continuance be charged to the plaintiff. Therefore the amendment was withdrawn and the case proceeded, the plaintiff insisting that the testimony offered was admissible without it. But the court below was not of that opinion, and we agree with him. It was not pertinent to any issue made by the pleadings as they stood, without the amendment; and especially is this true, as there was no allegation or offer to prove that it was a scale or cinder emitted in this locality that struck the plaintiff's eye and occasioned the injury for which the suit was brought. This disposes of the 14th ground of the motion, and with it of all the special grounds set forth therein.

8. While we are strongly inclined to the opinion that the plaintiff's evidence made no case entitling him, under the law, to a verdict, and that the motion for a non suit should have been sustained, under the rule laid down in *Zettler vs. The City of Atlanta,* 66 *Ga.,* 195, 196, that it "should always be awarded where the judge would set aside a verdict, if found for the plaintiff, for the want of

sufficient evidence to support the same." Yet, inasmuch as no cross-bill of exceptions was taken, or other exception made to the decision overruling the motion, we will not decide the question in this case, as well as another made in connection with it, viz: to what extent negligence is a question, both as to the law and fact involved in it, peculiarly cognizable by the jury, and as to the power of the judge to charge them as to facts which constitute negligence, or which relieve the party accused from the charge. This much mooted question is not necessarily involved in the final disposition of this case, and need not be further considered.

9. But, be this as it may, we are satisfied that the jury have reached a correct conclusion, and had they found differently, their verdict would have had no foundation to rest on.

The plaintiff was voluntarily on this train by the invitation of the conductor, extended at his own request; he paid no fare, and none was expected from him; he selected the car on which he rode; it was his own choice that he was upon an open flat car, rather than in the passenger coach,—that he was in a position where he was more exposed to accident from sparks and cinders than he would have been had he taken a seat in a closed coach; he rode there for his own special accommodation, and was entitled to look for only such security as that mode of conveyance was reasonably expected to afford. He voluntarily incurred the injury of which he complains, and even if the other party were somewhat at fault, he could not recover damages against it therefor. 19 *Ga.* R., 445, 446. By the exercise of ordinary care, he could have avoided the consequence to himself, and is therefore entitled to no recompense, even if the defendant was negligent. Code, §2972 and citations. This would be true, even if he were regarded as a passenger, entitled to all the rights growing out of that relation. It is doubtful if he was, under the circumstances, a passenger at all in the full legal sense of that term; at

most, he was so only *sub modo*, and to a limited extent. The defendant's engine, according to the weight of evidence, was properly constructed and provided with the best known " spark-arrester ;" it was in proper order, and if the defendant was injured under the circumstances, the injury is attributable to accident, rather than negligence. 2 Thompson Neg., p. 1234 (7), and citations.  A carrier of passengers is not obliged to foresee and provide against casualties which have not been known to occur before, and which may not be reasonably expected.  If he has availed himself of the best known and most extensively used safeguards against danger, he has done all that the law requires, and his liability is not to be ascertained by what appears, for the first time after the disaster, to be a proper precaution against its recurrence.  Cooley on Torts, note 2, beginning on page 671 and extending on page 672 (the latter portion of note and citations therein), especially 56 N. Y. R., 1; *Id.*, 656; 18 *Id.*, 408; 68 *Id.*, 306, 310, and citations; 84 *Id.*, 455; 50 Cal., 183; 70 Penn., p. 86; Wood's Mayne Dam., p. 69; 1 Sutherland Dam., 21, 22, 23.  If these cases announce correct principles of law, as we think they do, then is the action of the court, in refusing to disturb this verdict, fully vindicated.

Judgment affirmed.