SOUTHWESTERN TELEGRAPH & TELEPHONE CO. *v.* ROBINSON.

*(Circuit Court of Appeals, Fifth Circuit.  May 30, 1892.)*

TELEPHONE COMPANIES—NEGLIGENCE—SUSPENDED WIRE—ELECTRICAL STORM.
    A telephone company which for several weeks permits its wire to remain sus-
    pended across a public highway, a few feet from the ground, is liable to a traveler
    who comes in contact therewith during an electrical storm, and is injured by a
    discharge of electricity which had been attracted from the atmosphere, since the
    electricity would have been harmless except for the wire.

In Error to the Circuit Court of the United States for the Northern
District of Texas.

At Law. Action by J. B. Robinson against the Southwestern Tele-
graph & Telephone Company for personal injuries. Verdict and judg-
ment for plaintiff. Defendant brings error. Affirmed.

Statement by BRUCE, District Judge:

Plaintiff in error was sued by defendant in error in the district court of
Cooke county, Tex., for damages in the sum of $12,000. He states
his cause of action as follows:

"Your petitioner, J. B. Robinson, a resident of Cooke county, Tex., com-
plaining of the Southwestern Telegraph & Telephone Company, a private
corporation incorporated under the laws of the state of New York, but doing
business in the state of Texas and having a legal office in Gainesville, Cooke
county, Texas, respectfully represents that on or about the 29th day of
October, A. D. 1889, the defendant owned and operated a telephone line
between the cities of Gainesville and Dallas, Tex., and intermediate points,
the connection between said cities being made by a single wire suspended by
means of poles in the manner of telegraph wires, usually about thirty feet
from the ground; that its said telephone line or wire crossed the public high-
way between Dallas and McKinney, known as the 'Dallas and McKinney
Road,' about five miles south of Plano, in Dallas county; that at said points
and over said road on the aforesaid date, and for several weeks prior thereto,
the defendant negligently suffered and permitted its aforesaid wires to be and
remain suspended over said road within a few feet of the ground, and within
such proximity thereto that travelers on the said road unavoidably and neces-
sarily came in contact therewith; that the said wire so suspended over said
road, which was a public highway between two large cities, and daily traveled
by many people in vehicles and on horseback, all of which was known to the
defendant, was a dangerous and unlawful obstruction of said road, and a
public nuisance, and that the defendant on the aforesaid date, and long prior
thereto, knew of the condition of said wire at said point, or might have known
it by the exercise of reasonable care, but nevertheless negligently permitted
it to remain in the condition aforesaid; that the said wires are the best known
conductors of electricity, and are the only vehicles in general use for the
transmission of electric currents, and, during electric or thunder storms, such
wires ordinarily become heavily charged with electricity, of power sufficient to
inflict death or do great injury to those coming in contact with them, and
that from this fact arises the peculiar danger of allowing such wires to remain
suspended so low that people will come in contact with them,—all of which
was on the aforesaid date and long prior thereto well known to the defendant,
or might have been known to it by the exercise of ordinary care; that on the
afternoon of the aforesaid date, as plaintiff was traveling on horseback on the

said Dallas and McKinney highway during the prevalence of a heavy thunder storm, such, however, as is usual in that section at that season of the year, he came in contact with the defendant's said wire at the point aforesaid, in consequence of its being suspended so near the ground; that it was a dark, stormy evening, and that the wire was invisible to plaintiff, and plaintiff came in contact with it through no fault or negligence on his part, but through the gross negligence and carelessness of the defendant, as aforesaid, in leaving said wire suspended over a public highway within a few feet of the ground; that at the time said wire was heavily charged with electricity generated by the storm then prevailing, as aforesaid, and, on coming in contact with it, plaintiff received a full charge of the fluid, which knocked him from his horse and completely paralyzed him for the time being, depriving him of the power of speech and locomotion; that plaintiff lay in the road where he had been thrown, in the rain and storm, until picked up by a passerby, and carried to a neighboring house, and there plaintiff was confined to his bed for more than five weeks, suffering during this period severe bodily pain and mental anguish. Plaintiff represents that he is but little past middle age, and before said injuries was of a vigorous mind and robust constitution, and capable of great endurance and physical and mental activity, but that, in consequence of said injuries, his health and mental faculties have been permanently and seriously impaired, and his capacity to pursue his usual avocation practically destroyed, to his actual damages ten thousand dollars. Plaintiff further represents that, on account of said injuries, he has been put to great expense for medical attention, and that his condition is such as to require, for the future, constant medical treatment and the care of his family, who are thus withdrawn from their customary duties, to his actual damages two thousand dollars. Wherefore, plaintiff sues, and prays that the defendant be cited to answer herein, and that on final hearing he have judgment for his said damages, costs, and for further general and special relief."

The case was removed into the circuit court of the United States for the northern district of Texas, and the defendant answered as follows:

"Now comes defendant, and for answer by way of demurrer to plaintiff's cause of action says, first, that the plaintiff ought not to have and maintain this cause, for that his original petition does not state facts sufficient to constitute a cognizable and enforceable demand before the law. Of this he prays the judgment of the court. And for further answer, if such be necessary, defendant says it denies each and singular the allegations in the plaintiff's petition contained, and says it is not guilty of the wrongs, injuries, and negligent conduct charged; and of this it puts itself upon the country. And, answering further, it says if plaintiff was injured in any manner, it was the result of his negligence,—that he failed to exercise that reasonable degree of care, in traveling at the dangerous time in which he alleges he was traveling, and in avoiding contact with defendant's line during a thunder storm, that a reasonably prudent man ought to have exercised under like circumstances. Wherefore, defendant says plaintiff ought not to recover, and of this it puts itself upon the country."

The case was heard, and the demurrer was overruled, to which ruling the defendant excepted, and the trial before court and jury resulted in a verdict for plaintiff in the sum of $2,500, for which amount, with interest and costs, judgment was afterwards rendered. Motion for new trial was filed, heard, and overruled by the court. The assignment of error is that in the record of the proceedings of the above cause in the trial court there is manifest error, in this, to wit:

"The court erred in overruling the general demurrer of the said South-western Telegraph & Telephone Company to the original petition and cause of action of the said J. B. Robinson, as will appear from an inspection of the said petition, demurrer, and judgment of the court thereon."

*John W. Wray*, for plaintiff in error.

*M. L. Crawford*, *W. O. Davis*, and *J. L. Harris*, for defendant in error.

Before PARDEE, Circuit Judge, and LOCKE and BRUCE, District Judges.

BRUCE, District Judge, (*after stating the facts.*)     The question and the only question for review here is whether the plaintiff stated a cause of action in his petition, and if the demurrer to the cause of action, as stated by the plaintiff in the court below, was properly overruled. In *Railroad Co.* v. *Jones*, 95 U. S. 439, it is said negligence is the failure to do what a reasonable and prudent person would ordinarily have done, under the circumstances of the situation, or doing what such a person, under the existing circumstances, would not have done. It would seem too plain to require argument that the allegations of the petition show negligence on the part of the telephone company. Under the facts and circumstances stated the wire was an obstruction upon the public highway. Travelers were liable to collide with it, and injurious consequences to them would follow as the natural and probable result of such contact.     Article 622 of the Revised Civil Statutes of Texas provides:

"Corporations created for the purpose of constructing and maintaining magnetic telegraph lines are authorized to set their poles, piers, abutments, wires, and other fixtures along, upon, and across any of the public roads, streets, and waters of the state, in such manner as not to incommode the public in the use of such roads, streets, or waters."

The duty on the part of the telephone company was clear to prevent its wire from becoming an obstruction on the highway. Under the circumstances shown the defendant in error might have been hurt by coming in contact with the wire of the telephone company, and injuries to the defendant in error might have resulted, independent of the fact that the wire at the time was loaded with a charge of electric fluid from the clouds and storm then prevailing. So that it is difficult to see how this verdict could be disturbed even if the contention of the plaintiff in error is correct, that the electricity with which the wire was charged at the time was the proximate and immediate cause of injury to the defendant in error, for which the telephone company cannot be held responsible. Negligence is a mixed question of law and fact, and is a question for the jury, under proper instructions from the court. It is not claimed here that the court misdirected the jury in its charge on the law of the case, and the verdict is: "We, the jury, find for the plaintiff in the sum of twenty-five hundred dollars." The jury found negligence on the part of the telephone company, resulting in injuries to the defendant in error, and for which they assess his damages at $2,500. It is not shown that the jury found that the wire of the telephone company was charged with electricity at the time the defendant in error came in

contact with it, and that the electric fluid was the cause of the injury to the defendant in error, and so it is not clear that there was any error in the ruling of the court, even upon the theory of the case insisted upon by the plaintiff in error. No point is made on the question of contributory negligence, and the contention of the plaintiff in error seems to be that the petition states the cause of action to have been the injuries which resulted from the fact that the wire at the time of the contact with it by the defendant was charged with electric fluid, for the creation and existence of which the telephone company was in no sense responsible. Persons, however, must be held to know the ordinary operation of the forces of nature, and to use proper means to avert danger. If the electric fluid with which the wire of the telephone company was charged at the time was an element or the main element in the production of the injuries to the defendant in error, still it is clear that the displaced wire furnished the means of the communication of the dangerous force which resulted in the injury to the defendant in error. Science and common experience show that wires suspended in the atmosphere attract electricity in the time of storms, and when so suspended and insulated are dangerous to persons who may at such times be brought in contact with them, and the petition charges that, during electric or thunder storms, such wires ordinarily become heavily charged with electricity, of power sufficient to cause death or great injury to those coming in contact with them; and whether this is so or not is a question of fact. To say that the agency of the telephone wire in the production of the injury was inferior to that of the electric current, which was the main cause, is not satisfactory. It is, in fact, to admit that the company's displaced wire furnished the means by which the dangerous force was communicated to and injured the defendant in error. True, it was a new force of power which intervened, with the production of which the telephone company had nothing to do, but upon this point, in *Insurance Co.* v. *Tweed*, 7 Wall. 52, the court say:

"If a new force or power has intervened, of itself sufficient to stand as the cause of the misfortune, the other must be considered as too remote."

The new force or power here would have been harmless but for the displaced wire and the fact that the wire took on a new force, with the creation of which the company was not responsible, yet it contributed no less directly to the injury on that account. In *Gleeson* v. *Railroad Co.*, 140 U. S. 435, 11 Sup. Ct. Rep. 859, the court held that a landslide in a railway cut caused by an ordinary fall of rain is not an act of God, which will exempt the railway company from liability to passengers for injuries caused thereby while being carried on the railway; and on page 441 (page 861, 11 Sup. Ct. Rep.) of the opinion in that case the court, quoting from an English case, say "that the plaintiff was entitled to a verdict on the ground that, if a person maintains a lamp projecting over a highway for his own purposes, it is his duty to maintain it so as not to be dangerous to persons passing by; and if it causes injuries, owing to a want of repair, it is no answer on his part that he had employed a competent man to repair it;" citing 1 Thomp. Neg. pp. 346, 347. No

case is cited like the one at bar, but the principles upon which cases of this character have been decided sustain the verdict in this case, and the judgment of the court is affirmed.