## COLUMBUS RAILROAD COMPANY *v.* KITCHENS.

Where an electric-light company maintains overhead wires from its plant to a residence of one of its patrons, for the purpose of supplying light to the house, the company is under duty to employ such approved apparatus in general use as will be reasonably necessary to prevent injury to the house or persons or property therein, arising from electricity which may be generated by a thunderstorm and strike the wires and be conducted thereby into the residence. A petition which alleged a negligent failure in respect of such matters, and damage arising therefrom, was not subject to demurrer on the ground that it failed to set out a cause of action. The petition was not subject to any of the grounds set out in the demurrer.

NOVEMBER 13, 1914.

Action for damages. Before Judge Gilbert. Muscogee superior court. December 22, 1913.

Mrs. A. E. Kitchens instituted an action for damages against the Columbus Railroad Company. A demurrer to the petition was filed, which was overruled, and the defendant excepted. The petition alleged the following, in substance: That defendant, a corporation,

on the day of the injury and for some time prior thereto, was engaged in furnishing and supplying electricity to its customers for the purpose of lighting residences, for a consideration to be paid. The plaintiff was a customer to whom the defendant supplied electricity for the purpose of lighting her residence. The media or vehicles used by the defendant to transmit the electricity to residences were wires strung overhead on poles or posts, at intervals along the streets and vicinage, and from the poles into the residences to be lighted. At the end of the wires were attached incandescent lamps. The wires so used are among the best known conductors of electricity, and during thunderstorms are exceedingly dangerous and liable to cause death or great bodily harm to persons at or near them, unless properly insulated and safeguarded by ground-wires, lightning-arresters, or other safe appliances. The defendant furnished electricity to light petitioner's residence by wires in the manner just described. The wires to her residence extended from a pole or post directly north of and about ninety feet from the residence. The length of the pole or post is about thirty or forty feet, and stands on a hill or mound which adds to its height, thereby increasing its liability to be struck by lightning. On the day first above mentioned a slight electric storm occurred, of such severity as usually occurs in that locality at that season of the year. At the time of the storm the plaintiff was engaged in her usual household duties, and was standing in one of the rooms so lighted by the defendant, about two or three feet in a vertical line from one of the electric lights, when lightning struck the pole or post just referred to, and the electric current was conveyed along the wires to petitioner, throwing her violently to the floor and causing injury. The defendant was negligent in all of the particulars aforesaid, and especially in not properly grounding and safeguarding the wires so used, and in not constructing and maintaining them with due diligence and care.

After the demurrer was filed an amendment was allowed, alleging that the defendant failed to propely insulate, ground, and safeguard said wires and said post or pole by the use of proper and necessary appliances for arresting, diverting, diffusing, or conducting to the earth the excessive and dangerous current of electricity when struck by lightning which their condition and position would naturally attract under such conditions. The amendment also added, to the

averments descriptive of the manner in which she received the electric shock, the following: "When lightning struck the post or pole referred to . . , the electric current caused thereby, or a dangerous portion thereof, was conveyed on and along said wires to petitioner's residence and to the electric light near which she was standing, leaping from the end of said light wire to petitioner's body, severely shocking her," etc.  The amendment also added a paragraph, charging that defendant was negligent in not "properly safeguarding the wires and post or pole referred to in the foregoing paragraphs, so that when struck by lightning, or for any other cause they became overcharged with electricity, the excess would be controlled, diverted, diffused, or conducted into the earth, and not be transmitted on and over the wires to petitioner's residence in the way and manner aforesaid, thereby causing the injury for which this suit is filed."  The demurrer complained that no cause of action was set forth, in that the petitioner did not allege (a) any breach of duty to petitioner; (b) or that the defendant was not in exercise of all ordinary care and diligence due the plaintiff; (c) or any facts showing that the wires were not in a safe condition; (d) or specifically any acts of negligence, or definitely how or in what manner the defendant was negligent.  Other grounds of demurrer are, that it appears from the allegations of the petition that the injury was a result of an unavoidable accident, and that it was the result of a stroke of lightning; that there are no allegations that the injury would have been averted by any kind of insulation, ground-wires, or lightning-arresters; and that it is not alleged that the wires running into the plaintiff's residence were not properly insulated, nor is it alleged "what it takes to constitute proper insulation."

Frank U. Garrard and A. S. Bradley, for plaintiff in error.

Henry C. Cameron, contra.

ATKINSON, J.  In Heidt v. Southern Bell Telephone Co., 122 Ga. 474-478 (50 S. E. 361), it was said by Evans, J.: "Persons or companies operating telephone and electric-light systems for the transmission of electricity upon and over public highways owe to the public the duty of properly constructing and maintaining their respective wires and poles; they are bound to provide such safeguards against danger as are best known and most extensively used, and all necessary protection must be afforded to avoid casualties which may be reasonably expected.  Higgins v. Cherokee Railroad, 73 Ga. 149;

*Davis* v. *Augusta Factory,* 92 *Ga.* 712 [18 S. E. 974]. They are not insurers against accidents, but are bound to use reasonable care proportioned to the danger of injury. In determining whether the proper care and diligence in construction or maintenance has been observed, not only the physical structure of wires and poles must be considered, but also the use to which it is to be put, its remoteness or proximity to travelers on the highway, the nature of the electrical current which is to be transmitted over the line, the relative position of other lines, and all other circumstances affecting the case." See also *Denson* v. *Georgia Railway & Electric Co.,* 135 *Ga.* 132 (68 S. E. 1113) ; *Sedlmeyr* v. *City of Fitzgerald,* 140 *Ga.* 614 (79 S. E. 469), and citations. In the cases cited the dangerous instrumentality which caused the injury was the electricity which was being supplied by artificial means, which was known and intended to be transmitted over the wires. In that respect the cited cases differ from the one now under consideration, where the electricity emanated from independent or natural cause, and got upon the wires, and was conducted by them to the plaintiff and injured her. Dealing with matters of this character was the case of Phœnix Light & Fuel Co. *v.* Bennett, 8 Ariz. 314 (78 Pac. 48, 63 L. R. A. 219), in which it was held: "Providing insulation sufficient to withstand lightning which may strike the wires is not within the obligation of an electric-lighting company in carrying its wires into a building for the lighting of which it has contracted to furnish electricity." But no other court seems to have adopted that view. In other cases it has been said: "A telephone company having reasonable grounds to apprehend that lightning will be conducted over its wires into a house where it maintains an instrument under contract with a subscriber, and there do injury to persons or property, must exercise due care in selecting, placing, and maintaining, in connection with its wires and instruments, such known and approved appliances as are reasonably necessary to guard against such accidents." Griffith *v.* New England Telephone & Telegraph Company, 72 Vt. 441 (48 Atl. 643, 52 L. R. A. 919). It was further said, in the course of the opinion: "Having undertaken to place and maintain the instrument in the house, and connect it with its telephone line for the use of the deceased, in so doing it was under a duty to exercise the care of a prudent man in like circumstances. If, while in the exercise of such care, it had reasonable grounds to

apprehend that lightning would be conducted over its wires to and into the house, and there do injury to persons or property, and there were known and approved devices for arresting or diverting such lightning so as to prevent injury therefrom to the house or persons therein, then it was the defendant's duty to exercise due care in selecting, placing, and maintaining, in such connection with its wires and instruments, such known and approved appliances as were reasonably necessary to guard against accidents that might fairly be expected to occur from lightning when conducted to and into the house over its telephone wires.". In Southwestern Telegraph & Telephone Co. v. Robinson, 50 Fed. 810 (1 C. C. A. 684, 16 L. R. A. 545), it was held: "Injury caused by electricity generated by a thunderstorm, in a telephone wire which was negligently allowed to hang across a highway so low that a traveler came in contact with it in the dark, renders the telephone company liable, as the wire furnished the means by which the dangerous force was communicated and the injury caused." In the opinion it was said: "The contention of the plaintiff in error seems to be that the petition states the cause of action to have been the injuries which resulted from the fact that the wire at the time of the contact with it by the defendant was charged with electric fluid, for the creation and existence of which the telephone company was in no sense responsible. Persons, however, must be held to know the ordinary operation of the forces of nature, and to use proper means to avert danger. If the electric fluid with which the wire of the telephone company was charged at the time was an element or the main element in the production of the injuries to the defendant in error, still it is clear that the displaced wire furnished the means of the communication of the dangerous force which resulted in the injury to the defendant in error. Science and common experience show that wires suspended in the atmosphere attract electricity in the time of storms, and when so suspended and insulated are dangerous to persons who may at such times be brought in contact with them; and the petition charges that, during electric or thunderstorms, such wires ordinarily become heavily charged with electricity of power sufficient to cause death or great injury to those coming in contact with them; and whether this is so or not is a question of fact. To say that the agency of the telephone wire in the production of the injury was inferior to that of the electric current, which was the

main cause, is not satisfactory. It is, in fact, to admit that the company's displaced wire furnished the means by which the dangerous force was communicated to and injured the defendant in error. True, it was a new force or power which intervened, with the production of which the telephone company had nothing to do; but upon this point, in Insurance Co. v. Tweed, 74 U. S. (7 Wall.) 52, 19 L. ed. 67, the court says: 'If a new force or power has intervened, of itself sufficient to stand as the cause of the misfortune, the other must be considered as too remote.' The new force or power here would have been harmless but for the displaced wire and the fact that the wire took on a new force, with the creation of which the company was not responsible; yet it contributed no less directly to the injury on that account." The doctrine of this case was also cited and applied in Jackson v. Wisconsin Telephone Co., 88 Wis. 243 (60 N. W. 430, 26 L. R. A. 101); Peninsular Telephone Co. v. McCaskill, 64 Fla. 420 (60 So. 338, 32 Ann. Cas. (1914B) 1029).

The reasoning above set forth demonstrates that the petition as amended in this case set out a cause of action, and was not subject to any of the grounds of demurrer.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*