## 8699. CITY OF CUTHBERT *v.* GUNN.

1. The petition as amended set out a cause of action, and the court did not err in overruling the demurrers. The suit was based in part upon alleged negligence of the defendant in that a transformer connected with one of its electric lines from which a secondary current was conveyed to the house of the plaintiff "was of limited power" and incapable of reducing a current of more than 2000 volts to a safe voltage, on account of which an "overflow" of electric current on the primary line surcharged the line leading into her domicile, and inflicted upon her physical injuries. The court allowed an amendment setting up that the transformer was defective in that it was not supplied with oil; and the allowance of this amendment is complained of upon the ground that it set up a new and distinct cause of action. In its last analysis, the incapacity of the transformer to reduce the primary current of high voltage, so as to permit a safe current of low voltage to pass into the wires connecting with and intended to afford light to the plaintiff's house, was the ground of negligence originally set forth, and the amendment merely set up an additional reason why the transformer was insufficient to insure the passage of only a safe current of electricity; and hence it did not set up another and new cause of action, but merely amplified the ground of negligence already alleged.

2. It was not alleged that the municipality was negligent in failing to provide such approved apparatus in general use as would be reasonably necessary to prevent injury to the plaintiff arising from an excess of current entering her house over the secondary wires, whether generated mechanically or by a thunderstorm, but the city was alleged to have been negligent in failing to maintain proper insulation on the wires conveying the electricity, and in failing to provide a transformer of sufficient capacity to reduce properly the current passing through it; and hence the charge of the court to the jury, to the effect that the municipality was "bound to provide such safeguards against danger as are best known and most extensively used," was not harmful to the defendant and will not require a reversal.

3. While the defendant set up in its answer that the injury to the plaintiff was caused "by a stroke of lightning during a thunderstorm, the same being an act of God and for which this defendant is not liable," and there was evidence to the effect that there was some electrical disturbance in the atmosphere on the day the plaintiff was injured, manifested before and at the time of the injury by lightning, thunder, and otherwise, there was neither pleading nor proof to the effect that such electrical disturbance was so extraordinary and unprecedented as to come within the meaning of an act of God against which the defendant was not required to guard; and hence the court did not err in refusing to charge the jury that an act of God would relieve the defendant from liability. The defendant was under the duty to employ such approved apparatus in general use as would be reasonably necessary to prevent injury to the plaintiff, when attempting to use the light it supplied for the purpose of illuminating the house she occupied, "arising from electricity which may be generated by a thunderstorm and strike the wires and be conducted thereby into the residence."

DECIDED DECEMBER 14, 1917.

Action for damages; from Randolph superior court—Judge Worrill. March 10, 1917.

*George H. Perry,* for plaintiff in error.

*Yeomans & Wilkinson, James W. Harris, J. E. McDonald,* contra.

WADE, C. J.  It is only necessary to refer briefly to the second headnote above.  The court instructed the jury that there is a duty of persons or "municipal corporations, operating an electric-light system for the purpose of transmitting electricity over its lines of wires and supplying light in and to the houses of patrons, of properly conducting and maintaining their wires, their poles, their transformers; [and they] are bound to provide such safeguards against danger as are best known and most extensively used, and all necessary protection must be afforded to avoid casualties which may be reasonably expected."  This excerpt from the charge of the court is objected to upon the ground that it was for the jury to determine whether the defendant had exercised ordinary care in providing the apparatus actually employed, and that this charge did not require of the defendant the degree of diligence which is exacted by law.  In *Columbus Railroad Co. v. Kitchens,* 142 *Ga.* 677 (83 S. E. 529, L. R. A. 1915C, 570), the Supreme Court laid down the rule as follows:  "Where an electric-light company maintains overhead wires from its plant to a residence of one of its patrons, for the purpose of supplying light to the house, the company is under the duty to employ such approved

apparatus in general use as will be reasonably necessary to prevent injury to the house, or persons or property therein, arising from electricity which may be generated by a thunderstorm and strike the wires and be conducted thereby into the residence." This court said, in *Americus Gas & Electric Co.* v. *Coleman,* 16 *Ga. App.* 17 (3), 18 (84 S. E. 493) : "The following charge was error: 'They are bound to provide such safeguards against danger as are best known and most extensively used, and all necessary protection must be afforded to avoid casualties which may be reasonably expected.' The duty rested upon the defendant to use such safeguards against danger, in the construction and maintenance of its wires, poles, etc., as were prudent, usual, and customary; but the burden did not rest upon the defendant to employ the safeguards 'best known and most extensively used.' The defendant was bound to ordinary care and diligence, and was required to so construct its lighting system that persons proceeding along the streets and highways, according to the usual modes of travel, would not be liable to incur danger from currents of electricity by contact therewith." It is true that the Supreme Court in *Columbus Railroad Co.* v. *Kitchens,* supra, did make the following quotation from *Heidt* v. *Southern Bell Telephone Co.,* 122 *Ga.* 474-478 (50 S. E. 361) : "Persons or companies operating telephone and electric-light systems for the transmission of electricity upon and over public highways owe to the public the duty of properly constructing and maintaining their respective wires and poles; they are bound to provide such safeguards against danger as are best known and most extensively used, and all necessary protection must be afforded to avoid casualties which may be reasonably expected." This statement by Mr. Justice Evans in the *Heidt* case, supra, is based upon the authority of *Higgins* v. *Cherokee Railroad,* 73 *Ga.* 149, and *Davis* v. *Augusta Factory,* 92 *Ga.* 712 (18 S. E. 974), there cited. It will be found from an examination of the *Higgins* case, that the precise ruling therein was as follows: "A carrier of passengers is not obliged to foresee and provide against casualties which have not been known to occur before and which may not be reasonably expected. If it has availed itself of the best known and most extensively used safeguards against danger, it has done all the law requires." In the decision in the *Davis* case, supra, where the action was for the

homicide of a minor employee who received injuries resulting in her death from certain machinery of the defendant which, "though not of the latest, safest, and most improved design, was nevertheless safe when properly operated," the court said: "It is sufficient if the machinery is .of a kind in general use, and reasonably safe for all persons who operate it with ordinary care and diligence." In *Southern Railway Co.* v. *Thompson,* 129 *Ga.* 367, 369 (58 S. E. 1044), exception was taken to the charge of the court that if the engine set out the fire which burned the property of the plaintiff, "then the law would presume that it was negligently done, unless the company introduces evidence which shows that they did, through their agents, servants, and employees, exercise all ordinary and reasonable care and diligence, and that they had their engine properly equipped with the most modern and best-known appliances for the prevention of the setting out of fire." In discussing this instruction Mr. Justice Lumpkin said: "The charge complained of in effect required the defendant to rebut the presumption against it by proving both the use of all ordinary and reasonable care and diligence and also that it equipped its engine 'with the most modern and best-known appliances.' This was too stringent." This court, in *Vinson* v. *Willingham Cotton Mills,* 2 *Ga. App.* 53 (58 S. E. 413), said: "It is not incumbent upon persons or corporations using machinery in the prosecution of their business to procure the best and safest machinery which can be made. It is sufficient if the machinery is of a kind in general use, and reasonably safe for all persons who operate it with ordinary care and diligence. 'No manufacturing business or business establishment is bound at its peril to make use only of the best implements and the best machinery and the safest methods.' Cooley, J., in Michigan Cent. R. Co. *v.* Smithson, 45 Mich. 219 (7 N. W. 793; 1 Am. & Eng. R. Cas. 104)." See also *Belk* v. *Lee Roy Myers Co.,* 17 *Ga. App.* 684 (3) (87 S. E. 1089).

The cases last quoted from, or referred to above, support in principle the view that an instruction placing upon a municipality furnishing electric-lights or electric current the duty of not only employing "such approved apparatus in general use as would be reasonably necessary to prevent injury to the house, person, or property therein, arising from electricity," etc., but also the additional burden of using apparatus which must not only be thus rea-

sonably safe, but must be likewise such as was "best known and most extensively used," is erroneous. In other words, under such an instruction, notwithstanding the apparatus actually used may have been of such a kind and quality as to preserve to the highest degree and in the most effective manner the safety of persons using the current or coming in contact with any part of the electric system, and though it might be far superior to any other similar apparatus employed by others, if it was not perchance such apparatus as happened to be not only reasonably safe but also the "best known and most extensively used," the defendant could be held liable for employing it. In the case of *Heidt* v. *Southern Bell Telephone Co.,* supra, the expression "they are bound to provide such safeguards against danger as are best known and most extensively used," when taken in connection with the context, and considered in the light of the special facts of that case, was doubtless correct; but it was not intended as a broad statement of the law touching the general duty resting upon those furnishing electricity, which would serve as a safe rule of diligence to be laid down for the guidance of a jury by a trial judge. Many things, as has often been said by the Supreme Court and this court, which find place in the opinions handed down by reviewing courts, may be accurate statements of the law governing the particular case under discussion, and yet not furnish proper instruction for a jury in trying a similar case.

Proof that a municipal corporation operating an electric-light system provided such safeguards against danger "as are best known and most extensively used" might authorize a finding that it had not been negligent in employing the particular apparatus actually used to prevent injury from the electrical current transmitted or supplied by the corporation; but no rule of diligence would *require* the municipality "to provide such safeguards against danger as are best known and most extensively used," in order to relieve itself from the consequences resulting from defects in its electric apparatus or system, for the apparatus or system actually employed might in fact be superior to and safer than similar apparatus or a different system "best known and most extensively used." The employment of such safeguards against dangers "as are best known and most extensively used," by a person or municipality operating an electric-light system, might relieve

such person or municipality from liabilty on account of injuries resulting from defects in the apparatus employed to safeguard the dangers current, and therefore proof that apparatus coming within that description had been used might constitute a good defense; but on the other hand, if the person or municipality exercised proper care and diligence in employing safeguards which would reasonably provide against such dangers, this would amply suffice, regardless of whether the apparatus employed was the "best known or most extensively used."

However, the error in placing upon the defendant in this case the burden of providing such safeguards against danger "as are best known and most extensively used," in addition to the burden of providing such apparatus in general use as would be reasonably necessary to prevent the injury (*Columbus Railroad Co.* v. *Kitchens, supra*), could not be held to have influenced the jury in arriving at their verdict in favor of the plaintiff, when considered in the light of the pleadings and the particular facts developed at the trial; and therefore will not require a reversal. It will be borne in mind that no recovery was sought upon the ground that the defendant had failed to provide safeguards of the proper kind and quality to prevent the alleged injury, and it was not alleged in the petition nor was there any evidence to the effect that the apparatus, to wit, a certain transformer, provided by the defendant to safeguard against danger the consumers of the electric current furnished by the city, was not all that the exercise of the appropriate degree of care and diligence by the city required, and was likewise not such a safeguard against danger as was "best known and most extensively used." Instead, a recovery was sought upon the distinct ground that (in addition to the danger arising from the alleged fact that the insulating covering had worn off from some of the wires) the transformer through which the plaintiff received the current of electricity that injured her was not sufficient in capacity to reduce a current of such high voltage as passed over the primary line on the occasion in question, and was not adequately charged or filled with oil, which still further diminished its reducing capacity; and the undisputed evidence tended to show that the transformer used was in fact as good as any generally employed, and was such a transformer as was "best known and most extensively used," but, notwithstanding its quality and

kind, it was insufficient to properly safeguard against danger on account of *its small capacity* and its oilless condition at the time. In other words, no harm was done to the defendant by instructing the jury that it was required to provide such safeguards against danger "as are best known and most extensively used," when there was no evidence and no contention that the safeguards actually furnished were not in fact such as are best-known and most extensively used. Merely the *capacity* of the particular safeguard to protect against actual current coming over the wire at the time, and the *condition* of the first-class safeguard provided by the city, were in issue.

Taking the case as a whole, it appears that there was no reversible error, and that the verdict against the city was authorized by the evidence.

> *Judgment affirmed. Jenkins and Luke, JJ., concur.*