22576. GEORGIA POWER COMPANY *v.* STONECYPHER.

Decided August 24, 1933.

*Colquitt, Parker, Troutman & Arkwright, Erwin, Erwin & Nix, Bond & McClure,* for plaintiff in error.

*Wheeler & Kenyon, Winston Owen,* contra.

MacINTYRE, J. The plaintiff in this case contends that the defective construction of a transformer and the failure to maintain the equipment at the point designated in plaintiff's petition was the proximate cause of the injury to the plaintiff. He contends that this transformer was an old transformer; that it was defective in that no lightning arrester was placed at either of these poles; that no proper ground-wires were placed there, and that in July, 1930, when in his house in the exercise of ordinary care, lightning flashed and came from this transformer in question and went into his house, and that he was injured and damaged as set out in his petition. He also contends that the house was damaged in the amount of $16.40. The defendant contends that if the plaintiff was injured, it was in no way responsible for the alleged injury, but that if injured, as he contends, the same was an act of God caused by lightning for which the defendant is not responsible. The defendant further contends that it is not liable as it had provided such safeguards against danger as are best known and most extensively used, and that all necessary protection was afforded to avoid casualties which might have been reasonably expected.

The plaintiff must show that the defendant was negligent in some one or more of the ways alleged in the petition, and that the negligence proven was the proximate cause of the injury. The fact of negligence may be proven by direct or circumstantial evidence, and "where circumstances are proven from which reasonable men may fairly disagree as to the existence of negligence, the question is for the jury." Roanoke Ry. & El. Co. *v.* Young, 108 Va. 783 (62 S. E. 961). The phrase res ipsa loquitur "is merely a short way of saying that the circumstances attendant upon an accident are themselves of such a character as to justify a jury in inferring negligence as the cause of that accident." Bennedick *v.* Potts, 88 Md. 52. It is simply a rule of evidence authorizing the jury to infer negligence on proof of circumstances indicating it. *Sinkovitz* v. *Peters Land Co.,* 5 *Ga. App.* 788 (64 S. E. 93); *Monahan* v. *National Realty Co.,* 4 *Ga. App.* 680 (62 S. E. 127). Where something unusual happens with respect to a defendant's property, over which he has control, and by such extraordinary oc-

currence a plaintiff is injured, an inference may in some cases arise from an unexplained occurrence which has worked an injury to another that the defendant who had in charge the instrumentality which was the direct cause of the injury was guilty of negligence, which may or may not be drawn by the jury,—that is the inference of negligence may or may not be drawn; but, like the facts of negligence or no negligence, the inference which the jury may be authorized to draw is peculiarly an inference of fact, and it is not an inference of law. And if from the facts an inference of negligence arises, it may be rebutted by the defendant, like any other inference arising from the proof submitted. *Sinkovitz* v. *Peters Land Co.*, supra. And where an inference of ·negligence may be inferred from proven facts, if the inference is rebutted or disproved, or satisfactorily explained, it should not be held against the defendant. *City of Cuthbert* v. *Gunn*, 21 *Ga. App.* 442. "The question in every case is the same,—whether the circumstances surrounding the occurrence are such as to justify the jury in inferring the fact in issue." Bennedick *v.* Potts, supra. "It is not that in any case negligence can be assumed from the mere fact of the accident and injury, but in these cases the surrounding circumstances which are necessarily brought into view by showing how the accident occurred contain, without further proof, sufficient evidence of defendant's duty, and his neglect to perform it." Sherman and Redfield on Negligence, § 59.

The defendant stresses the contention that the doctrine of res ipsa loquitur could not be applied and that the plaintiff could not recover in this case unless he showed that the casualty complained of could not have happened if reasonable care had been used by the defendant. The rule invoked by the defendant can not apply where superhuman powers are being dealt with; for neither science nor common experience has as yet reached the place where a transformer can be equipped with lightning arresters or any other device which would be entirely effective against all bolts of lightning that the all-powerful God might send along an electric line into a transformer. The Ruler of the Universe might send into electrical equipment a bolt of lightning that not only ordinary care could not control, but that the combined efforts of the entire human race could not prevent from causing a given injury. The rule, therefore, with reference to devices, apparatus, or equipment of

electric companies,—that is, the companies maintaining poles and electric-light wires over which electricity is transmitted and furnished to the public, is as stated in *Heidt* v. *Southern Telephone Co.*, 122 *Ga.* 474, 478 (50 S. E. 361): "Persons or companies operating telephone and electric-light systems for the transmission of electricity upon and over public highways owe to the public the duty of properly constructing and maintaining their respective wires and poles; they are bound to provide such safeguards against danger as are best known and most extensively used, and all necessary protection must be afforded to avoid casualties which may be reasonably expected. *Higgins* v. *Cherokee R.*, 73 *Ga.* 149, 164; *Davis* v. *Augusta Factory*, 92 *Ga.* 712 (18 S. E. 974). They are not insurers against accidents, but are bound to use reasonable care proportioned to the danger of injury. In determining whether the proper care and diligence in construction or maintenance has been observed, not only the physical structure of wires and poles must be considered, but also the use to which it is to be put, its remoteness or proximity to travelers on the highway, the nature of the electrical current which is to be transmitted over the line, the relative position of other lines, and all other circumstances affecting the case."

If the jury had accepted the evidence of the defendant, there could have been no recovery in this case, for its evidence showed that it had lived up to the rule just above stated. However, the plaintiff's evidence was in sharp conflict with the evidence of the defendant on this feature of the case. The plaintiff's evidence showed that the transformer was on a pole about 35 or 40 feet high, the equipment was between 60 and 67 feet of his kitchen and about 75 feet from the room in which the plaintiff was sitting at the foot of his bed in his home; that he was knocked unconscious and thrown on the floor, and did not know how long he remained unconscious; that the transformer in question was an old-style transformer and was not modern and up-to-date; that it had been used by the city plant near the city hall; and that from the city hall it was moved to a pole in the street near the home of James Crawford. James Crawford swore with reference to the transformer as follows: "They had that transformer down below my house. As to whether during lightning and storms was there any trouble down there—nothing only striking and dashing off; of course they had to work on

it every time it came up a cloud, they have to work on the transformer and put in plugs or something. As to what happened during storms, lightning, it seemed like, hit that quicker than anything else. As to whether did it strike there on the wire, it looked like it hit that, the lightning flashed on and off. They moved it away from my house down below Mr. Stonecypher's. I have not had any trouble after they moved the transformer from down below my house. I have not seen any trouble at Stonecypher's house since they moved it from Stonecypher's. I have known it to lighten, it hasn't struck anything since. He hasn't had any trouble since they moved the transformer. As to when it struck down there at me, would it have any effect on trees—I have seen it sprangle off towards the ground and I have seen it knock the bark off of trees forty or fifty feet or a little further from the transformer. I did not say anything myself to the Georgia Power Company men when they came to repair it. They came down to repair it; they would have to repair these things. It knocked the bark off of trees different times. It was the same transformer." The transformer was moved from near the Crawford home to where it was at the time of the casualty complained of in this case. Crawford swore that on the occasion when the plaintiff was shocked he was standing on his porch about 250 feet from the plaintiff's home; that "the lightning hit the transformer and dashed on Mr. Stonecypher's house or porch and unroofed it. It looked like the house was on fire, and smoke came from the transformer. As to how I know anything went from the transformer pole to the house, I seen it spring off from it. It looked like fire; something like a quart cup, a big ball, jumped off in sprangles, and jumped off from the wires and post from the transformer, and went to his house and tore the roof upon the house—just stripped his porch roof." The kitchen which was struck and unroofed was on a direct line between the room where Mr. Stonecypher was shocked and the transformer. There was also evidence that the transformer during the year or more that it remained in front of the plaintiff's home was humming and popping and that it was improperly grounded, and that if the lightning came on the power circuit, the ground-wire would carry it into the ground at the foot of the pole, where it could cross over a few inches to the other ground-wire and up to the light circuit and into the house. The meter in the plaintiff's house was

burned out. We hold, therefore, that the jury were authorized to find that the circumstances were sufficient to authorize the jury to infer, upon the facts at issue, that the defendant was negligent, and that such negligence was the proximate cause of the injury. *Columbus R. Co.* v. *Kitchens,* 142 *Ga.* 677 (83 S. E. 529, L. R. A. 1915C, 570). *Judgment affirmed. Stephens and Guerry, JJ., concur.*