## BLASS et al. v. VIRGIN PINE LUMBER CO.
### No. 6006.

Circuit .Court of Appeals, Fifth Circuit.

May 25, 1931.

Sydney C. Mize, of Gulfport, Miss. (Mize & Mize & Thompson, of Gulfport, Miss., and N. T. Currie, of Hattiesburg, Miss., on the brief), for appellants.

R. W. Heidelberg, of Hattiesburg, Miss., Luther L. Tyler, of Picayune, Miss., and J. W. Backstrom, of Leakesville, Miss., for appellee.

Before BRYAN, FOSTER, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

Venable Blass, a boy about fourteen years of age, was killed by lightning while alone in the bathroom of a residence in the town or village of Piave, Miss., in which he lived with his parents. To recover damages for his death this action was brought against the appellee, which operated a plant which provided electric light for residences and places of business in that town or village. Allegations of the declaration attributed the death of the deceased to negligence of the appellee in the wiring of the residence, in that there was no ground wire attached to the wire leading into the residence either on the inside or outside thereof, and in that there were no ground transformers or lightning arresters attached to appellee's wires leading from its plant to the place where a wire led from appellee's wire conveying electric current into said residence. Those allegations were put in issue. Upon the conclusion of the evidence the court directed a verdict in favor of the defendant, the appellee.

As to whether appellee's line between its plant and the point from which a wire went into the residence was or was not equipped with sufficient ground transformers or lightning arresters the evidence was in conflict. Uncontroverted evidence showed as follows: The residence mentioned was public school property. It was built by or at the instance of the school board; it was furnished to the deceased's father, a public school teacher, for his use, and appellee did not do, and in no way was responsible for, the wiring of that building or for the maintenance of that wiring, which was installed by or for the contractor who erected the building under a contract with the school board. There were two ways by which electric current might have been conducted into the bathroom or to objects therein, namely, by the wire leading from appellee's line to said residence, or by a cast iron vent pipe, located on the outside of the residence, which went from the west side of the house beneath it and above ground, and extended to the other side of the house, where it entered a cesspool, the bathroom fixtures being connected with that vent pipe before it entered the ground, but having no connection with the light wire. In the wiring of a residence a lightning arrester or ground wire is a needed part of the wiring to carry into the ground lightning that may come over the wire leading to the house. No lightning arrester or ground wire was a part of the wiring of the residence. Immediately after the death of the deceased it was found that the light bulb at the end of the drop cord attached to the wire leading into the residence about the center of the ceiling of the bathroom was bursted. The drop cord itself was not injured, and the use of it was continued after the casualty. The facing of the door leading into the bathroom was

loosened, nails being pulled, some enamel was knocked off the wash basin, the base board was bursted, and some of the molding was torn loose. An electrician who was a witness for appellants testified that if lightning had struck wires of appellee and gone into the residence with sufficient force to do the damage which testimony showed had been done, it would have burned up the drop cord, and no sign of the cord would have been left, and that if a stroke of lightning sufficient to tear base boards loose and kill a person were to strike the vent pipe, it probably would spread to other metals nearby even if the vent pipe went into the ground. Another witness for appellants testified that at the time of the thunderstorm, while he was standing in a store located east of said residence, the appellee's plant being north of that residence, he saw a flash of lightning and heard a clap of thunder just before he saw a crowd going in the direction of that residence, and that that flash of lightning was in the direction of that residence, and it looked like it came from a northwesterly direction. A short time after the casualty the fuses in the residence were replaced and the lights therein burned. An electrical engineer, who was the only witness examined for the appellee, testified that if a stroke of lightning of sufficient power to do the damage deposed to had entered over the light wire, then, in his opinion, the drop cord in the bathroom would have been destroyed; and that if lightning had struck appellee's wires between its plant and the point from which a wire led into the residence, it would have burnt up the transformers located near that residence, with a result of cutting off electricity from that house and keeping electric lights therein from burning. His testimony to that effect was not contradicted. The deceased's father, a witness for appellants, testified that he was at appellee's electric plant, about half a mile from his residence, during the storm in which his son was killed, and that there was no excitement around the power plant, and he noticed nothing unusual there.

■■ There was no evidence supporting the charge that the appellee was negligent in the wiring of the residence in that it supplied no ground wire, and that the death of the deceased was due to that negligence. The evidence without conflict showed that the appellee did not install or maintain the wiring, and that it was not responsible for the failure to supply a ground wire at or near the residence on the premises of its owner. Under the evidence adduced there were two theories as to how the electric current entered the bathroom, one that it was conducted through the vent pipe, and the other that it was conducted through the light wire with which the drop cord in the bathroom was connected. If the vent pipe was the means of entry, the appellee was not liable, as it had nothing to do with the installation of the vent pipe, and was not responsible for any defect in the manner of constructing or installing it. The death of the deceased could not properly be attributed to a failure of the appellee to provide lightning arresters at points along its line if the lightning struck the wire leading into the residence at a point between the property line and the residence, where nothing could prevent the current entering the residence except a proper lightning arrester as a part of the wiring of the residence. It was not permissible for the jury to adopt the theory that the entry of the electric current into the bathroom was due to appellee's failure to provide lightning arresters at points along its line unless there was tangible evidence to support the conclusion that such entry was due to that failure chargeable against appellee, rather than that the current got into the bathroom by means of the metal vent pipe or that it first struck the wire inside the line of the lot on which the residence was located and went into the bathroom because of the absence of a ground wire as a part of the wiring equipment of the residence.

■■ Where an injury or death might have been due to say one of several causes for only one of which the defendant was responsible, the jury cannot properly guess between those causes and find that the negligence or fault of the defendant was the real cause where there is no satisfactory foundation in the evidence for that conclusion. Patton v. Texas & Pacific Ry. Co., 179 U. S. 658, 21 S. Ct. 275, 45 L. Ed. 361; Illinois Power & Light Corp. v. Hurley (C. C. A.) 30 F.(2d) 905. Instead of the evidence furnishing any substantial support for the conclusion that the entry of the electric current into the bathroom was due to the failure of the appellee to have any or sufficient ground transformers or lightning arresters on its line, rather than to a cause for which the appellee was not responsible, facts or attending circumstances shown by uncontroverted evidence were inconsistent with that conclusion, and were consistent with the theories that the electric current entered the bathroom by means of the vent pipe, and that the stroke of lightning which caused the death came from the sky near the residence or between it and the prop-

erty line of the lot upon which it is located. The evidence was such that the court would have been justified in setting aside a verdict which involved a finding that the .death was due to a cause for which the appellee was responsible. This being so, the above-mentioned ruling was not erroneous. Barrett v. Virginian Railway Co., 250 U. S. 473, 39 S. Ct. 540, 63 L. Ed. 1092.

Counsel for the appellants invoked the provision of a Mississippi statute that "All questions of negligence and contributory negligence shall be for the jury to determine." Hemingway's Code Miss. 1917, § 503. Such a provision of a state statute does not have the effect in a federal court of making it erroneous for the court to direct a verdict, when the evidence is such that a verdict the other way would be set aside. Herron v. Southern Pacific Company, 51 S. Ct. 383, 75 L. Ed. —, April 13, 1931.

As to other rulings assigned as errors it is enough to say that none of those rulings involved reversible error.

The judgment is affirmed.