SOUTHERN TELEGRAPH & TELEPHONE COMPANY v. W. C. EVANS.

Decided February 18, 1909.

**1.—Electricity—Telephone—Lightning—Negligence.**

Evidence considered and held to support a recovery of damages against a telephone company for negligence in failing to provide a lightning-arrester device with a ground wire, where its wires entered the house of a subscriber, whereby one of the inmates received a shock from electricity carried into the building by the telephone wires during a storm.

**2.—Injury to Person—Pleading—Deafness.**

An allegation that by an electrical shock incurred through defendant's negligence, plaintiff suffered "serious, painful and permanent bodily injuries," held not limited to particular injuries subsequently described in the petition, and to support the proof of impairment of hearing as a result of the shock, though deafness was not specially alleged as a result.

**3.—Same—Simulated Injuries—Rebutting Evidence—Damages.**

Evidence of deafness resulting from injury to the person, if not admissible because not alleged as one of the particular results enumerated, was receivable in rebuttal as showing permanent injury, where defendant introduced evidence to show that the injuries were only slight and temporary. The question whether such impairment could then be considered as an element of damages would not arise on objection to the introduction of the testimony, but only on objection to the charge of the court on damages.

**4.—Evidence—Expert—Qualifications.**

The question of the qualification of a witness to testify as an expert must be largely left to the discretion of the trial court, and his decision will be held error only where abuse of such discretion appears. The competency of the witness is determined by the qualifications he exhibits, and not by his own opinion as to whether or not he deserves to be called an expert.

**5.—Evidence—Declarations of Servant—Harmless Error.**

Testimony as to statements of a telephone operator, in response to a request to call the house of E., who wanted a physician, that his telephone was "torn up by lightning," held admissible as part of the res gestae, though made

twenty-five minutes after the accident at E.'s house, an electrical shock, which was the subject of investigation; but if error, its admission was not ground for reversal where the same facts appeared from other testimony.

### 6.—Electricity—Negligence—Charge.

Instruction upon the issue as to negligence of a telephone company in failing to provide, for arresting the entry of dangerous currents of electricity from its wires into the house of a patron, proper devices at the point of entry, held not subject to the objections: (1) That it denied defendant protection from liability if other sufficient devices for the patron's protection had been employed by it; (2) that it was unsupported by evidence that the device in question would have averted the injury; (3) that it imposed an absolute duty to select the best device, instead of mere exercise of reasonable care to do so.

### 7.—Requested Instructions.

Charges are properly refused where they ignore an hypothesis supported by evidence and justifying a verdict for plaintiff in spite of the facts which the requested charges hold to constitute a defense.

Appeal from the District Court of Smith County. Tried below before Hon. R. W. Simpson.

*W. S. Bramlett* and *S. A. Lindsey,* for appellant.—There being no testimony in the case whereby the jury could have reached the conclusion that the atmospheric electricity which struck the plaintiff's wife was conducted along defendant's wires and into the plaintiff's residence, it was error for the court to overrule defendant's motion for a new trial raising such question. S. W. Tel. & Tel. Company v. Morris, 106 S. W., 426; S. W. Tel. & Tel. Company v. Keys and Casey, 110 S. W., 767; Byerly v. Consolidated L. P. & Ice Co., 109 S. W., 1065; S. W. Tel. & Tel. Company v. Morris, 106 S. W., 426, and authorities cited.

The injury was not the proximate result of defendant's negligence and defendant's motion for new trial should be granted. So. Bell Co. v. McTyer, 137 Ala., 601; 8 Am. Elec. Cas., 501.

The allegations of the plaintiff's petition are insufficient to sustain a claim for damages for an alleged injury to the hearing of plaintiff's wife. S. W. Tel. & Tel. Co. v. Tucker, 98 S. W., 909-910.

*J. A. Bulloch* and *J. S. McIlwaine,* for appellee.—The witness Fox having testified that he was not an expert in electricity and that he did not claim to be an expert electrician, his testimony was incompetent upon the issue of the defendant's negligence, and it was error for the court to admit the same over the objections of the defendant as made. Railway Co. v. Hepner, 83 Texas, 140; Ry. Co. v. Sciacca, 80 Texas, 354; Baldridge v. Garrett, 75 Texas, 631; Ry. Co. v. Smith, 52 Texas, 186; Kansas, G. S. L. Ry. Co. v. Scott, 1 Texas Civ. App., 1; 72 Texas, 1; 72 S. W., 382; 58 S. W., 544; 49 S. W., 160; 31 S. W., 695; 45 S. W., 832; 18 Texas, 498; 59 S. W., 626; 74 Texas, 608; 96 Texas, 258; 49 S. W., 691.

A statement made by the operator after the accident and not in the line of the duties of such operator, was not binding upon the defendant and such testimony was incompetent upon the issue of the defendant's negligence as charged in the plaintiff's petition. Railway

Co. v. Norris, 41 S. W., 708; Noel v. Denman, 76 Texas, .310; 1 Greenleaf on Ev. (15th ed.), secs. 113, 234; Mechem on Agency, secs. 714-715; 16 Cyc., p. 1013, sec. b., note 87, and authorities there cited; 16 Cyc., pp. 1021, 1022, 1023, and notes.

The law only imposing upon defendant the duty of exercising due care in placing such known and approved appliances as were reasonably necessary to guard against accidents that might fairly be expected to occur from lightning when conducted to the house over the defendant's wires, and the testimony showing that the telephone line which ran into plaintiff's house was protected by efficient fuses to prevent currents of high potential from passing into plaintiff's house, and that the office end of the line was well grounded with a wire more efficient than ground wires used at residence stations, it was error for the court to base the defendant's liability to plaintiff upon a failure to use a ground wire at plaintiff's residence or require defendant to use the most approved appliance in use at plaintiff's residence.

HODGES, ASSOCIATE JUSTICE.—The appellant owned and operated a system of telephone lines in the town of Troupe, and one of its telephones had been by it installed in the residence of appellee Evans. On the 27th of February, 1907, during a rain and thunder storm, Mrs. Evans, the wife of the appellee, received a severe shock from a flash of lightning, causing the personal injuries for the recovery of which this suit was brought against the appellant company. She was at the time standing in the room which contained the telephone, and within four or five feet of where the instrument was attached to the wall. The room was provided with doors and windows and a brick chimney with an open fireplace. At the time of the accident the other members of the family were in another room. The testimony on the part of the appellee shows that Mrs. Evans had gone into this room where the telephone was, alone; that a rain was falling, accompanied by thunder and lightning. There suddenly appeared a bright flash of lightning that illuminated the room like a ball of fire, which was immediately followed by a loud report like the discharge of a gun. Appellee and other members of the family immediately rushed into the room and found Mrs. Evans lying unconscious upon the floor within about four feet of the telephone. She was burned on the left side of her neck and face and her left arm. She remained unconscious for several hours thereafter. An effort was immediately made over the telephone in the Evans residence to summon a physician, but the telephone failed to work; the bell would not ring, and no connection could be obtained with the central office. Subsequently, a physician was summoned over another telephone. From a verdict and judgment in favor of the appellee for $1000 this appeal is prosecuted.

The suit is based upon a charge of negligence on the part of the telephone company in failing to provide and install in connection with its telephone at the residence of appellee a proper device for arresting lightning, an instrument commonly known as a "lightning-arrester."

together with a ground connection. It is shown that the proper office of this instrument is to prevent a heavy charge of electricity from going into a residence over the telephone wires, and it is constructed with the design to automatically cut off at the "arrester" any connection with the wires inside of the residence, and to transmit the excessive current over another wire to the ground. The specific negligence charged is that the appellant company failed to install in connection with its arrester device what is called a "ground-connection," that is, a wire running from the "arrester" to the ground. Upon this issue as to whether this had been done there was some conflict in the evidence, but we think the jury was justified in finding that there was none at this telephone.

There are several assignments challenging the sufficiency of the evidence to support the verdict of the jury, even if it be admitted that there was no ground-connection made at the Evans residence. The duty resting upon telephone companies to adopt precautions for preventing charges of atmospheric electricity from entering buildings over their telephone wires is thus stated by the Supreme Court of Vermont:

"Having undertaken to place and maintain the instrument in the house and connect it with its telephone line for the use of the deceased, in so doing it was under the duty to exercise the care of a prudent man under like circumstances. If, while in the exercise of such care, it had reasonable grounds to apprehend that lightning would be conducted over its wires to and into the house, and there do injury to persons or property, and there were known devices for arresting or dividing such lightning so as to prevent injury therefrom to the house or persons therein, then it was the defendant's duty to exercise due care in selecting, placing and maintaining, in connection with its wires and instruments, such known and approved appliances as were reasonably necessary to guard against accidents that might fairly be expected to occur from lightning when conducted to and into a house over its telephone wires." Griffith v. New England Tel. & Tel. Co., 72 Vt., 441, 52 L. R. A., 919; Southern Bell Tel. & Tel. Co. v. McTyer, 137 Ala., 601; 1 Joyce on Electric Law, sec. 445.

We think the evidence was sufficient to authorize a jury in arriving at the following conclusions of fact: (1) That it was required by the rules of this telephone company, and also of others, when installing a telephone in a private residence to also put in a lightning-arrester device to which was attached a ground-wire, and that this was usually done by telephone companies; (2) that no ground-wire was put in at the Evans residence; (3) that the failure to make such a connection was the omission of a useful part of the arrester device, and from such omission negligence might properly be inferred; (4) that Mrs. Evans was shocked by a current of atmospheric electricity and injured in the manner complained of; and (5), that this current of electricity from which she received the shock came into the residence over the appellant's wires. The last named issue, together with the contention that the failure, if any, to install a ground-wire at that place was not the proximate cause of the injuries, furnished the principal contest in the trial below, and are here presented with much elaboration and argument. The evidence relied upon mainly as sup-

porting the contention of the appellant, consisted chiefly of the testimony of experts, some of whom had afterward examined the telephone instrument which was in the Evans residence at the time of the accident, and others who gave their opinions upon hypothetical cases, as to what would or would not be the action of an atmospheric current of electricity under given conditions. It would serve no useful purpose to here give this evidence, or any substantial portion of it, in detail. It is sufficient to say that the testimony relating to those issues was conflicting, and was of such character that a finding either way by the jury should not be disturbed on appeal. There were some physical facts in evidence strongly corroborative of the testimony of the plaintiff's witnesses as to the current having gone into the residence over the appellant's wires. The main reliance for rebutting this was the testimony of the experts referred to concerning the laws which govern the movements of the electric fluid under certain conditions. By this appellant sought to prove that the injury could not have resulted from any failure of the company to place a ground-wire at that point. The courts are probably required to take judicial knowledge of natural laws which govern the causation of physical phenomena, such as electric activity, and in that respect the expert testimony may be regarded as intended more for the judicial enlightenment of the court than the establishment of probative facts. However, the writer deems it pertinent to say that whatever may be the scientific attainments of other tribunals regarding the nature and character of electricity, this court has not yet acquired sufficient enlightenment from any source to cause us to cease to regard with wonder and amazement, and with a sense of abject helplessness, the marvelous movements and perilous pranks of that mysterious agency, or force. We do not consider it a reflection on the learning of those who testified as experts on the trial to say that they furnished but little illumination except to explain the intricacies of telephonic instrumentalities as used today. They say that electricity is "freakish," and thus admit their ignorance of an established law by which its movements under all circumstances are governed. Neither do they agree among themselves what it will, or will not do, under given circumstances. The jury and the court were thus left much to their own knowledge, gained from common observation, to determine the issue presented. That the current which caused the shock to Mrs. Evans was not a very heavy one is made evident by the fact that the consequences were no more serious, and the traces of its passage no more observable. The current entered the room through some channel, or conductor. There was no evidence of its having come in contact with any portion of the building, or of the chimney, but there was evidence that it had passed over some portion of the wire of the appellant just outside of the room. According to some of the witnesses, a portion of the current might and would have returned to the nearest ground-connection after striking the wires, and the rest would be disseminated at the point where it entered the room. Others say that it might have leaped from the wire or phone to the body of Mrs. Evans. Those assignments which raise the issue of the sufficiency of the evidence to sustain the verdict are therefore overruled.

Objection is made to the action of the court in permitting Mrs. Evans while on the stand to testify that her hearing was not so good as before her injury. It is claimed that this evidence was not admissible because it was proving an injury not pleaded. The pleadings as to the injuries sustained were as follows: "That as a result of defendant's negligence as aforesaid plaintiff's wife received serious, painful and permanent bodily injuries and endured great physical pain and mental anguish; that her head, face, neck, shoulders, arm, eye and breast were burned and blistered; that she was rendered unconscious and remained so for a great length of time; that her nervous system was so severely shocked and deranged as to cause paralysis of the eye, throat, neck and arm, etc.; and that she suffered and now suffers great physical pain and mental anguish, and will continue to suffer the same so long as she lives." The allegation of "serious, painful and permanent bodily injuries" standing alone, and in the absence of any special exceptions, would be sufficient to include an injury to her hearing; but if this allegation is to be treated simply as inclusive of the particular injuries subsequently described in the petition, then it may properly be regarded as a general averment of that which is thereafter more particularly described, and, if so, should not be made a basis for recovery. We are disposed to treat this general allegation, however, as not being restricted to the particular injuries which are thereinafter alleged; and under that construction of the language used, we think the testimony was properly within the averments of the petition. Missouri, K. & T. Ry. Co. v. Edling, 18 Texas Civ. App., 171; Missouri, K. & T. Ry. Co. v. Walden, 46 S. W., 87; Gulf, C. & S. F. Ry. Co. v. McMannewitz, 70 Texas, 73; Curran v. Stange Co., 74 N. W., 378; Maitland v. Gilbert Paper Co., 97 Wis., 476, 65 Am. St. Rep., 137; 2 Abbott's Trial Brief (on the pleadings), pp. 1402-1404, and cases cited. But if we should be in error in so treating this evidence, we think it still might be admissible as tending to sustain the evidence of Mrs. Evans that she had been permanently injured and was not feigning. There was some evidence introduced by the appellant tending to show that Mrs. Evans was not in fact injured, or at most had not sustained any permanent injuries, and that her injuries, if any, were merely temporary and inconsiderable. Under the authority of the case of the San Antonio & A. P. Ry. Co. v. Callahan, 86 S. W., 929, her testimony was admissible to rebut the evidence introduced on the part of the appellant to that effect. In that case the court held that the testimony concerning an injury to the eyes, which was introduced upon the trial, not being included within the allegations stating the injuries, was improperly admitted; and the case was accordingly reversed and remanded. On a motion for rehearing, however, it was held that there having been an effort made to prove that the injured party was simulating, this evidence was admissible in rebuttal of that testimony, and even though it could not be made the basis of a recovery, it was properly admitted. Upon that theory the motion was granted and the case affirmed; the affirmance being predicated upon the correctness of that proposition alone. The Supreme Court refused a writ of error, thus indicating its unquestioned approval of the doctrine there announced. The ra-

tionale of the rule seems to be that an injury not pleaded as a ground of recovery may, nevertheless, be admitted as evidence when its physical connection with those alleged and relied on is such as tends to show that the latter were sustained, or that the occurrence which is made the basis of the suit did in fact take place as alleged. In the case at bar the fact that Mrs. Evans' hearing had been impaired by the shock was a cogent circumstance to rebut the contention and evidence to the effect that she was not seriously or permanently injured in the manner claimed. The jury was not compelled to consider it as an element of damage, unless authorized to do so by the court. The only result prejudicial to the appellant that would follow the admission of this testimony, was its consideration by the jury in estimating the amount of damages. This would not occur unless the court gave instructions concerning the measure of damages which would authorize the jury to so consider it. Should this be done the error would be in the charge of the court, and not in the admission of the testimony; and the assignment, to receive proper consideration, should be directed against the charge, and not against the ruling of the court in admitting the evidence. We are not called upon by this assignment to review the charge which the court may have submitted upon the measure of damages.

There was no error in refusing to sustain the objections to the testimony of the witness Milton Fox on the ground that he had not shown himself qualified as an expert. Whether a particular witness, offered for the purpose, should be permitted to testify as an expert, is often a difficult question to decide. There is no established rule for determining what degree of skill or knowledge should distinguish the expert from the nonexpert witness, and the matter in each case must be left largely to the discretion of the trial court. It is only when it is made to appear that there has been an abuse of that discretion that his rulings will be revised. In this case the trial court decided that the witness should be treated as an expert, and we can not say, in view of the facts in the record, that he erred in so doing. It is true the witness stated, among other answers to the questions propounded to him, that he was not an expert; but in such cases the qualification of a witness to testify as such is not to be determined by the estimate which he places upon himself, but by that which his answers show should be placed upon him. His statements that he was or was not an expert would be a mere conclusion upon his part, and his character should be determined by the qualifications which he exhibits rather than by his own conclusion.

In its sixth assignment of error the appellant complains of the admission of the following testimony: Dumas, a witness for the plaintiff, testified that he lived about a half mile from the telephone exchange, and had a telephone in his house; that about twenty-five minutes after the accident at Mr. Evans' house he rang his telephone and the night operator at the switchboard answered; witness was then asked the following question: "Q. Did you have a conversation with the operator there with reference to the fact that Mr. Evans' phone would not work? A. I told him (meaning the operator) that Mr. Evans wanted a doctor, and I said for him to ring Mr. Evans' tele-

phone and see if he could get him. He (meaning the operator) said, 'Mr. Evans' phone is torn up by lightning.'" This testimony was objected to by the appellant because the operator had no knowledge of the condition of the telephone at Mr. Evans' house, and what the operator said was a statement after the accident, not in the line of his duties, and was a mere conclusion upon his part. The objection was overruled and the testimony admitted. This witness also testified that he had endeavored to get the central office from Mr. Evans' house two or three times, but had failed; that he then went to his own residence, and from there rang the central operator and had the conversation objected to. It appears that he was then still making an effort to place Mr. Evans' telephone in communication with the central office in order that they might get a physician, and for that reason he requested the operator to ring Mr. Evans' house. It was in response to this request that the statement of the operator was made. Was this testimony subject to the objections urged (1) That the operator had no knowledge of the condition of the telephone at Evans' house; and (2) that it was a mere conclusion on the part of the operator? In saying that Mr. Evans' telephone was then torn up by lightning, the operator may and probably did have reference to the line to Evans' house as having been put out of order by lightning, and not to the fact that the telephone instrument in the house had been damaged. In fact, we think the jury would naturally conclude that he was referring to that of which he could speak advisedly, and that only, provided either was within his knowledge. If that be correct, then the operator could know from his place in the central office that the line was out of order at the time. It was a part of his duty to make connections with other telephones at the request of subscribers; and if he could not do so, to tell the reason why. This he was doing in giving the answer he did to Dumas. Was it a mere conclusion on his part that the trouble had been caused by lightning? There was testimony to the effect that the operator at the central office would know when anything was wrong with a certain telephone. From the evidence adduced we can not assume that the operator in this instance did not know the facts he was stating in answer to the question of Dumas. It was given in the course of his duty and soon after the thunder storm (or for aught that appears to the contrary, during its progress and existence), and for that reason may be regarded as a part of the res gestae. It was certainly given while the parties were undertaking to ascertain the cause of the trouble. But if there was error in admitting the testimony, the cause should not, we think, for that reason be reversed, because by appellant's own witnesses it was shown that the fuse was blown and the carbons arced on that line, and the testimony is pretty conclusive that at the time of the storm the wires were struck by lightning and put out of order.

Complaint is made of the following portion of the general charge of the court: "If, however, you find that the defendant failed to provide a ground wire at plaintiff's residence and that such attachment was necessary to make the appliance most approved in use, and if you find that such failure was negligence, and if you find that a current of electricity passed over defendant's wires from a stroke

of lightning and injured plaintiff's wife, then if you find that the provision of a ground wire would have lessened the current of electricity so that plaintiff's wife would not have been injured, then, if you so find, you will find for the plaintiff." We do not think the charge is subject to the criticism urged. The propositions under this assignment are not based upon what we think is a correct construction of the charge, nor proper deductions from the evidence.

The special charges requested and refused seem to be based upon the proposition that if the device for arresting lightning which was installed at the Evans residence answered the purpose for which it was designed, a verdict should be returned for the defendant, regardless of whether there was a ground-wire at that point. Such instructions, if given, would have ignored material portions of the evidence in this case. The ground-wire at the residence is shown to have been an important part of the arrester device, and without it the arrester was incomplete. The court instructed the jury to find for appellant if the current that produced the injury was of such force that it could not be controlled by arresters in use and known to appellant.

The judgment of the District Court is affirmed.

*Affirmed.*

Writ of error refused.