CHESAPEAKE & POTOMAC TELEPHONE CO. *v.*
WILLIAM B. NOBLETTE

[No. 53, April Term, 1938.]

*Decided June 14th, 1938.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, and JOHNSON, JJ.

*Wm. Pepper Constable* and *G. Elbert Marshall,* with whom was *John D. Alexander,* on the brief, for the appellant.

*L. Wethered Barroll* and *W. Albert Menchine,* with whom was *James W. Hughes* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

The appeal is from a judgment on the verdict of the jury in favor of William B. Noblette, plaintiff, and against The Chesapeake and Potomac Telephone Company of Baltimore City, defendant, for the alleged negligence of the defendant in the burning of the grist mill of the plaintiff. The negligence charged is a failure to keep the ground wire of a telephone installation in repair. It is asserted that this default was the cause of the mill being struck and set on fire by lightning during a thunderstorm.

The frame mill of two and one-half stories was in the form of a rectangle whose dimensions were twenty-four feet by thirty feet. The mill was about twenty-five feet high. The small, eight by ten feet, office was in the northwest angle of the mill and the engine room was in the northeast corner. From the rear or east side of the building an addition, eight feet high, projected. It was used for the gasoline motor which supplied the power to operate the machinery of the mill and the grain elevator which extended to the third floor. The office was entered by a solid door, and sunlight was admitted through an office window on the west side of the office. A telephone was mounted on the south wall of the office, opposite to the door.

The county road ran north and south a short distance away from the west side of the mill. The mill dam was near the north end of the mill, and the residence of the owner of the mill was southeast of that building about

a quarter of a mile distant. There were trees at the front and back of the mill, sixty or ninety feet away, and the trees and mill were the same height. The telephone line extended north and south with the road. The pole from which the telephone service in the office at the mill was connected stood about twenty-five feet west of the mill, and the line was carried from the top of this pole downward to the west side of the mill. Here the wire entered the building through a porcelain tube over the window, about sixteen feet above the ground, and was carried inside to a standard lightning arrester. The inside wire was brought from the outer side of the arrester and connected with the telephone instrument, which was fastened to the wall. It was that type which has a small wooden box to hold the interior equipment, with the receiver hanging from a hook on the left, and a crank on the right to turn to ring the operator.

A part of the equipment was a ground wire which ran from the bottom of the lightning arrester out to the exterior of the west side of the mill and down the outside of the mill, to which it was fastened by nailed cleats, and thence along the foundation wall into the ground, where it was united to a ground steel peg or rod. No suggestion is made of any defect or default in the instrument and equipment or in their installation. The telephone service was put there in 1929 or 1930, and there is no testimony of deterioration of the apparatus or equipment, or of lack of care in the operation and maintenance, until March or April, 1936. At this time, the plaintiff testified, they had noticed that the ground wire was broken from twelve to sixteen inches, according to varying witnesses, from the surface of the ground, and the upper part of the wire swung loose because the cleats had come loose, and the operator at the local telephone exchange had been notified of this condition. At the time of the fire the distance between the ends of the severed wire was something like two or three inches. There was nothing else in the mill which was electrically operated.

The fire occurred on June 3rd, 1936, between five and six o'clock in the afternoon. The plaintiff had been operating the mill by his gasoline motor, and had stopped between four and half past four in the afternoon. He then went to see a neighbor a half mile away. He remained there a short time and left for his home in his automobile. About half the distance between his home and the mill, he saw smoke coming up from the northwest corner of the mill. He had difficulty in estimating the time between when he left the mill and when he saw the smoke of the fire, and finally put it as something like five or ten minutes. He went at once to the mill, and could save nothing. The mill and its contents where wholly consumed. The principal and decisive question is the right of recovery on the whole testimony.

Where there is no contributory negligence, a telephone company is liable for injuries which are proximately caused to property by the negligent or improper manner of constructing and maintaining its lines and equipment in its control on the premises of a subscriber to its telephone service. As the telephone company is not an insurer against injury, it is not liable when it is not negligent; and, again, if negligent, the telephone company is not liable unless its negligence and the injury suffered are in casual relation. Should there be, however, a combination of two causes to produce an injury, and both are in their nature proximate, and the one cause be an act or something for which neither the company nor the person injured nor a known third party is responsible in tort for its happening, and the other cause be a negligent act or something sounding in tort for which the company is responsible, the telephone company is liable, if the injury would not have been sustained if it were not for such default on its part. *Restatement of Torts,* vol. 2, sec. 432, subsecs. 2, d-6 pp. 1161-1164. Thus the destruction of the mill by ignition caused by a stroke of lightning is a proximate cause of the injury suffered by the plaintiff who, as a general rule, may not recover for an injury inflicted by what is known in law as an act of God.

Nevertheless, should it be established by the plaintiff that the fire would not have been produced by the stroke of lightning had there not simultaneously existed a condition at the mill which was the result of the telephone company's negligence and which, in combination with the stroke of lightning, was the proximate cause of the fire which consumed the mill and its contents, the plaintiff would be entitled to recover against the telephone company for its neglect. *Griffith v. New England Telephone Co.*, 72 Vt. 441, 444, 48 A. 643; *Boomer v. Southern California Edison Co.*, 1928, 91 Cal. App. 375, 267 P. 178; *Stecher v. Southwestern Bell Tel. Co.*, 1931, 132 Kan. 362, 295 P. 709; *Wood v. Cumberland Tel. & Tel. Co.*, 1912, 151 Ky. 77, 151 S. W. 29; *Alling v. Bell Tel. Co.*, 1923, 156 Minn. 60, 194 N. W. 313; *Epperson v. Postal Tel. Cable Co.*, 1899, 155 Mo. 346, 50 S. W. 795, 55 S. W. 1050; *Rocap v. Bell Tel. Co.*, 1911, 230 Pa. 597, 79 A. 769; *Sinkovich v. Bell Tel. Co.*, 1926, 286 Pa. 427, 133, A. 629; *Western Tel. Corporation v. McCann*, 1937, 128 Tex. 582, 99 S. W. 2d 895; *Alabama Power Co. v. Farr*, 214 Ala. 530, 108 So. 373; *Southwestern Bell Telephone Co. v. McAdoo*, 178 Ark. 111, 10 S. W. 2d 503; *Southwestern Tel. & Tel. Co. v. Abeles*, 94 Ark. 254, 126 S. W. 724; *Pearce v. Mountain States Tel. & Tel. Co.*, 65 Colo. 91, 173 P. 871; *St. George Pulp & Paper Co. v. Southern New England Telephone Co.*, 91 Conn. 563, 100 A. 358; *Peninsular Telephone Co. v. McCaskill*, 64 Fla. 420, 60 So. 338; *Columbus Railroad Co. v. Kitchens*, 142 Ga. 677, 83 S. E. 529; *Georgia Power Co. v. Stonecypher*, 1933, 47 Ga. App. 386, 170 S. E. 530; *Wells v. Northeastern Telephone Co.*, 101 Me. 371, 64 A. 648; *Warren v. Missouri & Kansas Telephone Co.*, 196 Mo. App. 549, 196 S. W. 1030; *Lynch v. Carolina Tel. & Tel. Co.*, 1933, 204 N. C. 252, 167 S. E. 847; *Evans v. Eastern Ky. Tel. & Tel. Co.*, 124 Ky. 620, 99 S. W. 936; *Texas Tel. & Tel. Co. v. Scott*, 60 Tex. Civ. App. 39, 127 S. W. 587; *Southern Tel. & Tel. Co. v. Evans*, 54 Tex. Civ. App. 63, 116 S. W. 418; *Southwestern Tel. & Tel. Co. v. Davis*, Tex. Civ. App., 156 S. W. 1146.

The principles stated are subject to the qualification that the plaintiff must prove affirmatively the negligence alleged, and that it caused the injury, and that this burden is not met by testimony which tends to show that the negligence of the defendant may have caused, or even that it probably did cause, the injury, if it should further appear that the injury may have been produced by some other cause, for which the defendant was not responsible. *Moore v. American Stores Co.,* 169 Md. 541, 549, 550, 182 A. 436; *Shafer v. State,* 171 Md. 506, 509, 189 A. 273; *Realty etc. Co. v. Ulrich,* 164 Md. 666, 670, 165 A. 708.

Since the only negligence attributable to the defendant on this record is its failure, after notice, to repair, within a reasonable time, the broken ground wire, it is essential to the plaintiff's rights of recovery to show that this parted wire was the causal connection between the atmospheric discharge of lightning, which was observed by his sister, and the fire which destroyed the mill and its contents. In other words, the defendant was not responsible, and, therefore, not liable for the atmospheric electricity or lightning. Hence, even if the lightning caused the fire, the defendant had no responsibility, unless the lightning was carried by induction over the telephone wire into the mill, and started the fire because of the broken ground wire. No one saw the flash nor testified to it, except the sister. Although a few feet away from the mill, she was neither stunned nor affected by the discharge. Her face was turned from the mill and she did not see the bolt strike. She was blinded by the flash and startled by the "terrible crash." The testimony is that there was not the slightest damage to the telephone line, nor was a single telephone service on the party line affected by electricity on the wires. Under these unusual circumstances, it is contended that the lightning did not pass directly from the atmosphere to the mill, but that its current was received by the telephone wire and flowed by induction along the telephone wire into the mill to the telephone box, which it

set on fire. The prayers on the part of the defendant raise the question whether the testimony is legally sufficient for the jury to find the facts which are indispensable to the support of this contention. The solution of the problem is primarily dependent upon what is the testimony, and this inquiry compels a careful review and co-ordination of the facts in evidence.

Lightning and its effects of fire and violent destruction are familiar phenomena of nature. The testimony here tends to show that, immediately preceding the fire, there was a thunder storm and a blinding flash and crash, which were quickly followed by fire. From this it may be found that the ignition was caused by a direct stroke of lightning, since fire is a natural result of a frame mill being hit by lightning. The testimony on the record is consistent with a fire caused by the immediate impact of the thunderbolt with that portion of the mill where the fire first appeared. No one saw the stroke, and what actually happened must be established by circumstantial evidence. The plaintiff rejects the inference that the origin of the fire was a direct impact of lightning from the atmosphere upon the building. The theory upon which the plaintiff bases his action is that the telephone line was struck by the lightning, which was carried by the telephone wire as a conductor, so that the current of electricity was inducted into the mill to the telephone instrument, where the lightning arrester would have diverted the flow of lightning and caused it to be harmlessly conducted by the wire leading from the telephone arrester, out of the mill, and down the ground wire into the earth, where the electricity would have been dispersed without damage of any sort, if the ground wire had not been separated, with the two severed ends a few inches apart, about twelve or fourteen inches above the ground.

On the assumption that the testimony is true that the telephone company was notified by the plaintiff of this condition of the ground wire several months before the fire, and did not repair the break, it was negligence

on the part of the telephone company not to correct the defect. In the event the lightning would not leave one end of the ground wire, and leap across the few inches of intervening space, to follow the other end into the earth, it is, also, possible for the fire to have been produced in the office as a consequence of this break. The law, however, does not permit a plaintiff to establish his case by conjecture, and the testimony upon which the plaintiff relies as legally sufficient proof to support his right of recovery is the condition of the office after the flash of the lightning.

The evidence on this point is given by three persons, and their testimony will now be stated in the order of their arrival at the scene. The sister of the plaintiff was first. She was employed at the mill, and had left for the day as the storm threatened. She was a few feet away, when she heard a "terrible crash." She was startled and looked back, turned around and ran to the mill, and, she testified in chief for the plaintiff that "the smoke was pouring out of the cracks of the doors." She went to the building and opened the door, and said that you could see the telephone, "and it was ablazing," but she could not say anything else was, as there was a "terrible lot of smoke." At that time she said no other part of the mill was burning. The deduction that nothing else was burning but the telephone box is not justified by her testimony, nor is it consistent with the statement in reference to the smoke, so it is plain that she did not mean to confine the fire to the telephone box, which is very small and is not of inflammable material. The proof is to the contrary. The next person there was a near neighbor named Money. When he got to the mill he went to the office. His testimony is indefinite and in conflict. His first statement is that the "whole thing was afire"; then, "the office was afire and I couldn't see the phone"; then "the thing (i. e. the telephone) was afire up there." To the question in chief, "Were you able to see the phone?" his next reply was: "Not when I got there." Counsel for plaintiff asked: "At the time

you opened the door to go to the phone, where was the fire burning that you saw? A. Around the phone, around the wall where the phone was. Around the phone." In response to the last question in chief, this witness for the plaintiff stated that when he first saw the telephone "it was afire." On cross-examination, he said when he first looked in the door the phone box and the phone were afire, and he did not know what else. In answer to the question, why he did not pull the telephone box out if it was the only thing burning, he said, "It is too much fire." Then, "Q. And the phone was afire, and you didn't put it out? A. According to how much more could be afire. Q. The whole building could have been afire? A. Yes, sir."

There was a re-direct examination on the same point. And he was asked, what he had meant by his answer; and he said: "Well, I didn't know how much more fire could have been there. I saw that much." Again he was asked: "How much did you see? A. I seen the phone box in the office, and the corner papers around the phone." Further questioning drew out that the corner "papers" were a box in which the plaintiff kept his file papers, which were on fire about two and one-half feet to the right of the telephone box. His final testimony was a denial that he had seen the wall, and his affirmation that the only two things that he saw burning were the telephone box and the box of papers.

The owner, who was in his automobile about one-quarter of a mile away when he observed the smoke, went at once to the mill. On his arrival, he tried to get to the office to save his books and papers. He states "the telephone was on fire and burned completely up and the whole office was on fire. I couldn't enter it at all." He could not say where the telephone was, because "it had burned up and the wall too, and the blaze was whipping around, but the other walls hadn't caught."

It is upon this vague, inconclusive and contradictory testimony that the court is asked to hold that there is on this record legally sufficient testimony to go to the jury

for the jurors to find that the mill was not directly struck by lightning which thus set it on fire, but that the ignition was caused by an induced current which was conducted into the mill by the telephone wires as far as the telephone, which was set on fire, and thus the office and mill, by the failure of the lightning arrester to function because the ground wire had become disconnected by its severance a few feet above the ground. For the purpose of a demurrer prayer the invariable rule is that the court must assume as true all the testimony, and its reasonable inferences, in so far as they tend to support the right of action of the plaintiff, but this rule does not require the acceptance as true of the testimony of a witness when that testimony is so vague, indefinite and self-contradictory as to be plainly of no probative value on the vital issue of fact which is here involved. *Slacum v. Jolley*, 153 Md. 343, 351, 138 A. 244.

The court must, and does, disregard in this connection all the testimony on the part of the defendant in denial that the ground wire had parted, and that any information had ever been given the telephone company of any such condition. But after this is done, the court does not find legally sufficient testimony remains for its consideration to submit to the jury the right of the plaintiff to recover. The reason is that at most the testimony offered is circumstantial, and, before it may be accepted as legally sufficient to support the requisite inference that the fire was caused by induced lightning being grounded by an imperfect lightning arrester, there must not affirmatively appear on the record uncontradicted and inherently probable facts which make such an inference untenable. The significance of this fact lies in this, that the telephone in the mill was on a party line on which there were nine or eleven subscribers. If any one of these services were interrupted by lightning destroying the mechanism of its telephone by fire, the service of all would be interrupted until the necessary changes and repairs were made.

The danger of accepting the confused and conflicting

testimony on the part of the plaintiff as sufficient for the jury to make the inference that the induced electric current of lightning ran to the telephone box and set this box on fire, and that this fire spread from this beginning, is demonstrated by this record. The entire fabric of the plaintiff's right of recovery rests upon the assumption that the fire started with the burning of the telephone instrument. The testimony of the three witnesses on this point does not establish it by clear or direct proof, and no such inference may be made because of an incontestable physical fact which was established by the testimony offered by the plaintiff. After the witness Money had been to the mill and had seen the fire and the burning office, he went to a neighbor to give the alarm and to summon the fire company by telephoning to the telephone exchange. The telephone call was made and answered and the communication between the caller and the exchange was carried on, without difficulty or interference, by means of one of the number of telephones which, together with the telephone at the mill, were on the same party line or service. The importance of this physical fact is in its connection with the further incontrovertible physical fact that this call, message and response would not have been possible if, at the time of its use, the telephone instrument at the mill had been burned by lightning. If it had been burned, the telephone service on every telephone on that party line of from nine to eleven subscribers would have been destroyed. The testimony of expert witnesses is that, if the instrument were on fire for any cause, the insulation would burn, and that would short-circuit the wires and put the entire line out of service, so that none of the parties on the line with the mill could be called or call the telephone exchange. The expert for the plaintiff described the effect of the discharge of lightning during a storm, when in contact with the wire and telephone, would be to destroy, set fire to, or move the material through which it passes, if there were no connected ground wire. Furthermore, after this communication

by telephone, and after the fire had actually reached and burned the telephone, and not before, the telephone service on this party line was thereby ended until the necessary repairs were later made. The physical fact that the telephone service on the same party line as the mill was used after the fire started is conclusive evidence that the telephone at the mill had not been set on fire by the lightning.

In addition, there is the uncontradicted testimony on the part of the defendant's witnesses that part of the drop wire from the telephone pole to the building was intact and disclosed no evidence of lightning, which marks its presence and passage in a characteristic manner. The other portion of the wire was attached to the mill and had been burned by the fire. If the plaintiff were allowed to recover, it would be upon an hypothesis of facts without sufficient testimony for its maintenance. *Shafer v. State,* 171 Md. 506, 514, 515, 189 A. 273. At most, the plaintiff himself has shown that the injury complained of must have resulted either from the negligence of the defendant, or from a direct stroke of lightning, which is an independent cause for which the defendant is in no way responsible.

The plaintiff is, therefore, not entitled to recover, as he has failed to exclude the independent cause as the efficient and proximate cause of the injury. *Strasburger v. Vogel,* 103 Md. 85, 63 A. 202; *Wilson & Son v. Blaustein,* 144 Md. 289, 292, 293, 124 A. 886; *County Commissioners v. Wise,* 75 Md. 38, 23 A. 65; *Moore v. American Stores Co.,* 169 Md. 541, 549, 550, 182 A. 436; *Shafer v. State,* 171 Md. 506, 516, 189 A. 273.

Since the reasons here stated require that the prayer for an instructed verdict in favor of the defendant should have been granted, it is unnecessary to consider the other questions on the record.

*Judgment reversed, without awarding a new trial, with costs to the appellant.*