## DICKERSON v. SOUTHERN BELL TEL. & TEL. CO.

Civ. No. 1070.

United States District Court
S. D. Mississippi, S. D.

Aug. 1, 1953.

Luther Maples, Gulfport, Miss., and J. O. Moss, Lucedale, Miss., for plaintiff.

R. W. Thompson, Jr., Gulfport, Miss., and M. M. Roberts, Hattiesburg, Miss., for defendant.

WATSON, District Judge.

This is an action to recover damages for the alleged negligence of the defendant in the burning of plaintiff's building containing a store and post office, and also a dwelling. The action was commenced in the Circuit Court of George County, Mississippi, but was removed to this Court by the defendant because of diversity of citizenship and because the amount in controversy exceeds $3,000. Plaintiff is a resident and citizen of Bexley, Mississippi, and the defendant is a resident and citizen of New York.

The case was tried before a jury and at the close of plaintiff's evidence, the Court directed a verdict for the defendant on

the ground that there was no evidence from which the jury could find defendant negligent, or at least no evidence of negligence which was the proximate cause of the fire. This opinion is written in support of the Court's action directing a verdict for the defendant.

The testimony must be considered in the light most favorable to the plaintiff in testing its sufficiency to withstand a motion for directed verdict. Coleman v. Grabar Electric Company, 5 Cir., 1952, 195 F.2d 374. So viewed, the evidence tended to establish the facts as follows:

Plaintiff's complaint in substance charges that at approximately 3:00 p. m. on July 10, 1949, a charge of atmospheric electricity struck on defendant's telephone service line at or very near plaintiff's store and post office building, and that as a result of defendant's negligent and improper installation of a ground wire and ground rod, the atmospheric electricity entered along the telephone service line into the interior of plaintiff's store and post office building and set the same on fire.

The store and post office building was constructed in 1948 and was 20 feet wide, 28 feet long, and approximately 12 feet high, the outside walls being of concrete blocks and the roof of corrugated sheet aluminum. Plaintiff's dwelling was located about 10 feet to the east of the store and post office building, and was approximately 30 to 35 feet high. Both buildings faced the north on a public road. The Gulf Mobile and Ohio Railroad Company line ran north and south and was located about 300 feet to the east of plaintiff's dwelling. Defendant maintained telephone lines constructed on and along the right-of-way of the railroad.

Prior to the construction of the store and post office building in 1948, plaintiff had a telephone in his dwelling, but in early 1949, plaintiff had the defendant company transfer the telephone to the new store and post office building. The telephone was of the type which has a small wooden box with a crank to ring the operator and is known as the "magneter" type. The telephone was hung on a partition wall in the northeast corner of the post office por-

tion of the building and was a party line.

The pole from which the telephone service in the post office was connected stood about 75 or 80 feet east of the post office, and the line was carried from the pole upward to the roof of the east side of the store and post office building. From there the wires went to a metal box, a lightning arrestor, located on a 2 x 4 on the northeast corner of the top of the porch of the building. The service line then went on to and through the top frame of a window in the post office and connected with the telephone instrument fastened on the wall in the corner.

A part of the equipment was a ground wire which ran from the lightning arrestor on the front porch down the east side of the wall of the building into the ground where it was wrapped around a ground rod located about six to ten inches in from the front of the building. Plaintiff observed defendant's employees install the ground wire and rod and testified that the ground rod was about five feet in length and driven into the ground about 34 inches. The ground wire was wrapped around the rod a few inches below the surface of the earth and then spiralled out around the rod to the end of the rod. The rod was then bent so that the other end of the rod also went into the ground. Plaintiff stated that at the time of the installation, he told the defendant's employee that the rod wasn't in the ground as it was supposed to be. Plaintiff testified that the ground rod for the dwelling was sunk to a depth almost the full length of the rod. Plaintiff also testified that the rod had rust pits all over it.

Plaintiff contends that the installation of the ground wire and rod was defective in that the wire was not clamped or soldered to the rod and also because the rod was not sunk into the ground a sufficient depth. Plaintiff further contends that such defective installation was the proximate cause of the fire which destroyed plaintiff's buildings.

On July 10, 1949, at about 3:00 p. m., plaintiff and his wife left his premises to visit plaintiff's mother-in-law who lived about three and one-half miles away. Be-

ing Sunday, the store and post office building was closed and no one remained in the dwelling or store and post office building when plaintiff left to visit his mother-in-law. After travelling about a mile and a half, plaintiff stated it began to lightning but plaintiff continued on to his destination. Shortly after the lightning occurred, they passed Andy Byrd who was travelling in the opposite direction toward plaintiff's store. A few minutes after arriving at his mother-in-law's home, a person came to tell plaintiff his store was on fire. Plaintiff returned to his home immediately, found the store and post office building on fire and the roof of the dwelling had also started to burn. Plaintiff testified that although he did not go inside the post office, by looking through the door and windows he could see that the main fire was in the post office section of the building. When he arrived, fire was blazing through a hole in the roof of the store and post office building about two and one-half or three feet in size. The telephone service line was detached from the house and lay in the road. The other end was still on the telephone pole and was clipped off the following day by one of defendant's employees. Plaintiff testified that in an hour or more, the fire was extinguished but it had completely destroyed the dwelling and the roof and interior of the store and post office building. The walls of the store and post office building remained standing after the fire except for a few of the top blocks next to the house. After the fire, the plaintiff examined the wall of the store and post office building where the ground wire was located and found that the ground wire was gone and only a black streak remained. The Rural Electrification Association ground wire which was about 10 feet away from the telephone ground wire was still fastened to the wall of the building after the fire.

Andy Byrd testified that he was travelling in an auto toward plaintiff's house on Sunday afternoon and at a point about two miles away from plaintiff's house, he passed the plaintiff going in an opposite direction. Byrd continued on toward plain-

tiff's house stating he didn't pay any attention to thunder. Byrd was the first to arrive on the scene of the fire and he said there was smoke all in the store and on cross-examination testified that fire was burning through the top of the roof and that the fire appeared to be about half way from the front to the back of the building. The residence had not as yet caught fire. He also stated he did not know whether the telephone lines were still on the building or not. Byrd then turned the car around and went back to Charlie Dickerson's residence a brother of the plaintiff, who lives about one quarter of a mile from the plaintiff. After telling Charlie about the fire, Byrd immediately returned to the fire. On his return he did not notice any wires being down but a short while later he saw the Rural Electrification Association lines fall.

On the afternoon of July 10, Charlie Dickerson and his family were sitting on the porch of his house which was about one quarter of a mile west of plaintiff's property. Plaintiff's property, however, could not be seen from the porch. About 3:00 p. m., Charlie observed the plaintiff go by his house. Shortly after, he noticed lightning and thunder and one particular hard stroke of lightning about five or ten minutes after plaintiff passed by. About five minutes later, Byrd drove by but returned in a minute or so to tell them plaintiff's place was on fire. Charlie along with others in his family drove over to the fire. He testified that he looked in through a window on the south or rear side of the store and post office building and saw that the fire was concentrated in the post office portion of the building and that there was a blaze some 10 or 12 feet coming through a hole in the roof. The telephone service line was loose from the building and the Rural Electrification Association lines fell down across a neighbor's car shortly thereafter. After the fire Charlie also noticed the telephone ground wire was off the side of the store and post office building and the concrete blocks were scorched. He also testified that the dwelling caught fire three or four minutes after he arrived at the scene.

It is to be noted that none of plaintiff's witnesses testified that the fire was caused by lightning—none of them saw a bolt strike the store and post office building. Plaintiff stated that there was lightning while he was on his way to his mother-in-law's home. Andy Byrd stated he did not pay any attention to the thunder. Charlie Dickerson testified that there was a hard stroke of lightning while he was sitting on his porch but could not state that it struck plaintiff's building. J. C. Dill, an electrician, testified that he wired plaintiff's store and post office building for electricity in 1948 and also when the building was rebuilt after the fire. On cross-examination, he stated he could not tell whether the fire was caused by lightning. Testimony was also offered by two electrical engineers and though their testimony was informative and interesting on the general subject of lightning and protective measures to be taken against lightning, it offered little, if any, light on the specific questions of defendant's negligence and whether such negligence was the proximate cause of the fire. Plaintiff made much of the fact that the telephone ground wire was not on the building after the fire, and that the blocks were scorched, but these facts do not establish that lightning was the cause of the condition. Plaintiff's witnesses testified that it was extremely hot between the burning buildings and, therefore, the flames and the heat may very well have burned the wires and scorched the concrete blocks. The fire itself could have been the result of a short circuit in the electrical wiring or because of incendiary reasons. "Verdicts cannot rest upon guess or conjecture and a court that is left without knowledge of a fact after exploring to the full every channel of information must needs decide against the litigant who counts upon the fact as an essential of his claim." Shapleigh v. United Farms Company, 5 Cir., 1938, 100 F.2d 287.

Even if the Court were to permit the jury to speculate and find that the fire was caused by lightning, we must also find sufficient evidence from which the jury could find that the defendant was negligent and that such negligence was the causal connection between the atmospheric discharge of lightning and the fire. Plaintiff cannot recover if the fire was caused solely by a bolt of lightning and must, therefore, establish that the fire would not have been produced by the stroke of lightning had there not simultaneously existed a condition at the building which was the result of the telephone company's negligence and which in combination with the stroke of lightning was the proximate cause of the fire which destroyed the buildings. Chesapeake & Potomac Telephone Company v. Noblette, 175 Md. 87, 199 A. 832 and cases cited therein.

The Court does not believe that the plaintiff has established that the ground wire and rod were installed in a defective manner, but assuming that the installation was done in a negligent manner, it is essential to plaintiff's right to recover to show that this defective installation was the causal connection between the lightning and the fire. Hence, even if the lightning caused the fire, the defendant was not responsible unless the lightning was carried by induction over the telephone wire into the building and started the fire because of the defective ground wire and rod. As to this, the plaintiff clearly failed to carry its burden of proof. It is just as probable that the lightning passed from the atmosphere directly into the building, or from the atmosphere through the Rural Electrification Association wires and into the building, for either of which the defendant could not be held responsible. As pointed out in Blass v. Virgin Pine Lumber Company, 5 Cir., 1931, 50 F.2d 29, where an injury or death might have been due to one of several causes for only one of which the defendant was responsible, the jury cannot properly guess between those causes and find that the negligence or fault of the defendant was the real cause where there is no satisfactory foundation in the evidence for that conclusion.

For the foregoing reasons, the Court granted defendant's motion for a directed verdict.