Dear Comptroller Goldstein:
You have requested our opinion on several issues raised by a liability and indemnity provision in a procurement contract. This provision, which you describe as imposing "unlimited liability" on the contractor, was included in the request for proposals ("RFP") for certain network management services, and, like the other provisions in the RFP, was incorporated by reference into the contract. Your questions are as follows:
1. Does the provision in question "provide for unlimited liability of the contractor? Does unlimited include liability for acts of God, war, natural disasters, etc.?"
2. "Is the State required by law to provide that its contractors are to have unlimited liability?"
3. "If there is no such requirement, should the State insist in its contracts on unlimited liability for its contractors?"
Our opinion is as follows:
1. The provision in question is best construed as a protection of the State against the potential costs of the contractor's negligence. Within that scope, it is unlimited. The provision does not amount to an insurance policy, however, for the benefit of third parties. Thus, the provision does not increase the contractor's liability to third parties, because the contractor's exposure would be determined by principles of tort law. Under the law of tort, the contractor ordinarily would not be liable for acts of God and similar events.
2. The State is not required by law to provide that its contractors are to protect it from liability, without limitation, potentially arising from the consequences of their own negligence. Nothing in State law, however, prohibits a provision of this kind in a procurement contract.
3. The extent to which the State should protect itself in a procurement contract against risk associated with a contractor's negligence is a policy question, initially for the procuring agency and ultimately for the Board of Public Works, not a legal question for the Attorney General's Office. Under current law, a procurement officer has authority to decide that the State should bear none of that risk, even if the cost of goods or services is higher as a result. Indeed, the procurement officer's discretion is restricted in the other direction only: A procurement officer may not exceed certain limitations on the State's contractual assumption of risk for the contractor's negligence.
 I Background
Your letter indicates that, on September 10, 1997, the Board of Public Works approved contracts with three vendors for certain network management services. The contracts included the following provision, incorporated by reference from the RFP:
 The Contractor shall be responsible for all damage to life and property due to its activities or those of agents or employees, in connection with the services required under this Contract. Further, it is expressly understood that the Contractor shall indemnify and save harmless the State, its departments, agencies, units, officers, agents, and employees from and against all claims, suits, judgments, expenses, actions, damages and costs of every name and description, including reasonable attorneys fees and litigation expenses arising out of or resulting from the negligent performance of the services of the Contractor under this Contract.
Your letter states a concern "that requiring contractors to assume unlimited liability on State contracts will both drive up the cost to the State of doing business (for example, by requiring prospective vendors to increase the cost of their proposals so as to compensate for the potential unlimited liability) and reduce the pool of potential contractors, by eliminating those who refuse to assume unlimited liability."
The Attorney General's office approved the contract, including this provision, for legal sufficiency. See COMAR21.03.02.01. Your request, therefore, essentially asks us to revisit this legal issue.
 II Interpretation of Liability and Indemnity Clause
Your first question is whether the clause in question indeed provides "for unlimited liability of the contractor."[1] This question calls for an interpretation of the relevant contractual language. The better interpretation, in our opinion, is that the provision merely protects the State against any possible costs associated with the negligence of the contractor. The provision does not expand the contractor's liability from whatever it would otherwise be under the law of torts.
We acknowledge that the first sentence of the provision "the contractor shall be responsible for all damage to life and property due to its activities . . ." — considered in isolation, might be thought to be for the benefit of all third parties who may be damaged by the "activities" of the contractor, whether or not the damage was the result of the contractor's negligence. SeeFreigy v. Gargaro Co., 60 N.E.2d 288 (Ind. 1945). If that were the construction placed on the provision, it would indeed be an "unlimited liability" provision; the contractor might be liable even for damages resulting from an act of God. See, e.g.,Metrocon Constr. Co., Inc. v. Gregory Constr. Co., Inc.,663 S.W.2d 460, 462-63 (Tex.App. 1983).
The proper approach to the interpretive issue, however, is to ask whether "a reasonable person in the position of the parties would have thought" that this provision was meant to benefit not only the State but also third parties. See General MotorsAcceptance Corp. v. Daniels,303 Md. 254, 261, 492 A.2d 1306 (1985). In our view, a reasonable person in the position of the parties to this contract would not have thought so.
The language of the first sentence of the provision must be construed in context. See Kelley Constr. Co., Inc. v. WashingtonSuburban Sanitary Comm'n, 247 Md. 241, 249, 230 A.2d 672 (1967) (a contractual provision "cannot be read alone and without reference to" other pertinent provisions). Here, the second sentence of the provision, the indemnification language, specifically refers to holding the State harmless from all costs "arising out of or resulting from the negligent performance of the services of the contractor under this contract." This language is evidence that the provision as a whole is meant to protect the State fully from any claims made against it as a result of the contractor's negligence. The word "damage" in the first sentence should, in our view, be understood to mean damage resulting from the negligence specifically identified in the second sentence.
In addition, a contract for the benefit of third parties, especially an indeterminately large class of third parties, requires greater specificity than this provision. "[I]n order for a third party beneficiary to recover for a breach of contract it must clearly appear that the parties intended to recognize him as the primary party in interest and as privy to the promise."Shillman v. Hobstetter, 249 Md. 678, 687, 241 A.2d 570 (1968) (internal quotation marks and citation omitted). See also, e.g.,Wong v. Aragona, 815 F. Supp. 889, 892 (D. Md. 1993), aff'd, 61 F.3d 902 (1995) (applying Maryland law). No such clear indication appears here.
Interpreting the provision as we do, it is not one imposing "unlimited liability" on the contractor, if "unlimited liability" means liability to third parties. Whatever liability the contractor might have for injuries to third parties would be the consequence of actions brought in tort, not contract, against the contractor. The provision does protect the State against tort actions that third parties might bring against it, under some theory that the State is liable for the contractor's negligence. Under those circumstances, the indemnification language would protect the State without limit.
In defending a tort action brought by a third party alleging the contractor's negligence, the contractor presumably would be able to argue one or more of the usual array of tort defenses for example, that the contractor's act or omission did not breach a duty to the plaintiff or that the conduct was not the proximate cause of the injury. As a general rule, a plaintiff "may not recover for an injury inflicted by what is known in the law as an act of God." Chesapeake Potomac Tel. Co. v. Noblette,175 Md. 87, 91, 199 A. 832 (1938).
 III Scope of Procurement Officer's Discretion
In 71 Opinions of the Attorney General 274 (1986), Attorney General Sachs considered what might be seen as the opposite of your questions: whether a procurement officer had the authority to agree to an indemnity clause, insisted upon by the other party to the contract, under which the State would agree to pay the entire cost of the other party's negligence. Although Attorney General Sachs ultimately concluded that the procurement officer lacked the authority to agree to that particular indemnification arrangement, the opinion contained a discussion of contracting authority that we believe is pertinent here:
 An official authorized to enter a contract on behalf of the State or a State agency necessarily has broad authority to agree to terms that are reasonably related to the bargain. Although some contract terms are standard, others might be a product of bargaining over the specifics of a contract. . . . The State contracting officer negotiates a contractual arrangement "just as a private citizen or corporation might do" and must have "similar flexibility to prescribe . . . contract specifications that fulfill [the agency's] own perceived needs." This essential discretion in the contracting process has been recognized by the courts.
71 Opinions of the Attorney General at 277 (quoting 68 Opinions ofthe Attorney General 242, 246 (1983)) (other citations omitted).
This essential discretion applies to indemnity clauses, which "might well be reasonably incident to the contractual purpose. If the seller of the product is required to bear the risk of a given liability, that risk will be reflected in the price of the product. It might be in the State's advantage to negotiate a lower price by shifting risk to the State through the device of an indemnity clause." 71 Opinions of the Attorney General at 278. Thus, the opinion continued, "agreeing to indemnify a vendor against losses associated with the State's use of a product might reflect routine commercial practice and fall within the discretion of a contracting officer." Id.
"Yet," the opinion observed, "[that] discretion . . . is not unlimited." Id. A procurement officer may not agree to — or insist upon — an indemnity or other provision that is inconsistent with the Procurement Law or regulations or a clearly identifiable public policy. Public policy reasons led Attorney General Sachs to conclude that a provision requiring the State to bear indeterminate risk for another's negligence is beyond the authority of a contract officer unless insurance or another source of funds was available to underwrite the risk, or the agreement itself expressly conditioned the obligation on the availability of appropriations. 71 Opinions of the Attorney General at 278-80.
Applying this analytical framework, we conclude that a procurement officer has the discretion to include a liability and indemnity provision protecting the State unless the provision is inconsistent with law or a clearly identifiable public policy. We analyze these issues in the next section of this opinion.
 IV Validity of Liability and Indemnity Provision Protecting the State
A. Consistency with Procurement Law and regulations.
A contractual provision that protects the State against the consequences of a contractor's negligence is neither prohibited nor required by the Procurement Law. In fact, nothing in the Procurement Law directly addresses the matter. Even when the provision in question is considered in light of the broad purposes of the Procurement Law, as set forth in § 11-201
of the Financeand Procurement Article, no conclusive answer emerges. On the one hand, as your letter suggests, a provision that deters potential bidders might be deemed inconsistent with the policy of "fostering effective broad-based competition in the State through support of the free enterprise system." § 11-201(a)(4). On the other hand, protecting the State against the risk of future liability might well be considered "getting the maximum benefit from the purchasing power of the State." § 11-201(a)(7). In short, the Procurement Law itself does not affect the procurement officer's discretion in this regard.
The procurement regulations do not explicitly address the matter either. In describing contract specifications, the regulations provide as follows: "It is the policy of the State that specifications be written so as to permit maximum practicable competition without modifying the State's requirements." COMAR21.04.01.02A. An open-ended indemnity provision might lessen competition, if would-be bidders are deterred by it, but protecting the State against the costs of a contractor's negligence may well be seen as part of "the State's requirements."[2] Balancing these considerations is left to the procurement officer's discretion. Moreover, another regulatory provision tends to support the indemnity provision in question. The short-form contract term governing termination for default does not limit the contractor's liability; rather, if "the amount of damages caused by the Contractor's breach . . . [is] more than the compensation payable to the Contractor, the Contractor will remain liable after termination and the State can affirmatively collect damages." COMAR 21.07.01.11. Although the contractual provision in question goes further, requiring indemnification whether or not the contract is terminated for default, this regulation, adopted by the Board of Public Works, evidences approval of this kind of unlimited protection for the State. Of course, this protection typically comes at a cost: the price of goods or services will probably reflect the cost to the contractor of bearing the risk. Yet, whether these added costs are worth it, given the security that the indemnity clause provides, is a matter for the procurement officer's discretion.[3]
B. Consistency with public policy.
In general, "Maryland courts have been hesitant to strike down voluntary bargains on public policy grounds, doing so only in those cases where the challenged agreement is patently offensive to the public good, that is, where `the common sense of the entire community would . . . pronounce it' invalid." Maryland-NationalPark and Planning Comm'n v. Washington National Arena,282 Md. 588, 606, 386 A.2d 1216 (1978) (quoting Estate of Woods, Weeks Co., 52 Md. 520, 536 (1879)). As the Court of Appeals more recently observed, "this standard is a strict one, in keeping with our general reluctance to evoke the nebulous public interest to disturb private contracts." Wolf v. Ford, 335 Md. 525, 532,644 A.2d 522 (1994).[4] See also, e.g., Finci v. AmericanCasualty Co., 323 Md. 358, 376-78, 593 A.2d 1069 (1991).
We see no public policy basis for invalidating an unlimited indemnification clause running in the State's favor. As a legal encyclopedia observes, "there is no impropriety in a contractual provision or stipulation making the contractor liable for the consequences of his own negligence." 64 Am. Jur. 2d Public Worksand Contracts § 133 (1972). See Gay v. Engebretsen, 109 P. 876
(Cal. 1910); Freigy v. Gargaro Co., 60 N.E.2d 288 (Ind. 1945). Indeed, the Court of Appeals has found no overall public policy objection to exculpatory clauses, which, unlike the provision in question here but like the provision considered by Attorney General Sachs in his 1986 opinion, require one party to bear the risk of the other party's negligence. "In the absence of legislation to the contrary, exculpatory clauses are generally valid, and the public policy of freedom of contract is best served by enforcing the provisions of the clause." Wolf v. Ford,335 Md. at 531.See also, e.g., Schrier v. Beltway Alarm Co., 73 Md. App. 281,533 A.2d 1316 (1987) (limitation of liability clause does not violate public policy).
 V Conclusion
In our opinion, the liability and indemnification provision in question is lawful.
Very truly yours,
 J. Joseph Curran, Jr. Attorney General
 Jack Schwartz Chief Counsel Opinions Advice
[1] We note that one of the vendors requested a limitation of liability for both contract and tort claims. You did not inquire about the vendor's proposal to limit its liability to the State, and this opinion does not address that proposal.
[2] There is no suggestion that the indemnity provision in question was "drawn in such a manner as to favor a single vendor over other vendors." That technique is prohibited.
[3] Likewise, the procurement officer may take into account how many bidders or offerors are likely to pursue the business, with and without the indemnity clause.
[4] Despite the Court's reference to "private contracts," the contract considered in Washington National Arena involved a public agency. In general, when a government "enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals." Lynch v. United States, 292 U.S. 571, 579 (1934).
 *Page 111